**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| MICHELLE ANN CLAY | * | |
| 3478 Firestone Dr. | * | |
| Ijamsville, MD 21754 | * | |
| | * | |
| and | * | |
| | * | |
| AGNITA KOTE | * | |
| 14217 Georgia Ave, Apt. 204 | * | |
| Silver Spring, MD   20906 | * | |
| | * | |
| and | * | |
| | * | |
| VERONICA BLAKE WEINBERGER | * | |
| 15800 Radwick Lane | * | |
| Silver Spring, MD  20906 | * | |
| | * | |
| On Their Own Behalf and on Behalf of All | * | |
| Other Consumers Similarly Situated, | * | Civil Action No.      14-811 |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| KING HAGERSTOWN MOTORS LLC | * | |
| 1714 Massey Boulevard | * | |
| Hagerstown, MD 21740 | * | |
| <u>SERVE ON</u>: | * | |
| Conrad V. Aschenbach | * | |
| 16200 Frederick Rd. | * | |
| Gaithersburg, MD 20989 | * | |
| | * | |
| KING VOLKSWAGEN, LLC | * | |
| 979 North Frederick Avenue | * | |
| Gaithersburg, MD 20879 | * | |
| <u>SERVE ON</u>: | * | |
| Stephen C. Winter | * | |
| Suite 300 | * | |
| 600 Washington Avenue | * | |
| Towson, MD 21204 | * | |
| | * | |
| KING BUICK GMC, LLC | * | |
| 16200 South Frederick Avenue | * | |

Gaithersburg, MD 20877                          *
    SERVE ON:`                              *
    Conrad V. Aschenbach                    *
    C/O King Pontiac Buick GMC, LLC         *
    16200 South Frederick Avenue            *
    Gaithersburg, MD  20877                 *
                                            *

KING LINCOLN, INC.                              *
953 North Frederick Avenue                      *
Gaithersburg, MD 20879                          *
    SERVE ON:                               *
    Conrad V. Aschenbach                    *
    16200 South Frederick Ave.              *
    Route 355                               *
    Gaithersburg, MD 20760                  *
                                            *

KING AUTO OF SILVER SPRING, LLC                 *
3221 Automobile Boulevard                       *
Silver Spring, MD 20904                         *
    SERVE ON:                               *
    Elizabeth Anne Mendelson                *
    3221 Automobile Boulevard               *
    Silver Spring, MD 20904-4909            *
                                            *

KING VEHICLES, LLC                              *
16160 Frederick Road                            *
Gaithersburg, MD 20877                          *
    SERVE ON:                               *
    William Henry Aschenbach                *
    16160 Frederick Road                    *
    Gaithersburg, MD 20877-4011             *
                                            *
          Defendants.             *
                                            *

*     *     *     *     *     *     *     *     *     *     *     *     *

## CLASS ACTION COMPLAINT

Plaintiffs Michelle Clay, Agnita Kote and Veronica Blake Weinberger ("Plaintiffs" or "Named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, by and through their attorneys Richard S. Gordon and Stacie F. Dubnow of Gordon, Wolf & Carney, Chtd., and Mark H. Steinbach, Of Counsel to O'Toole Rothwell, allege and state as follows:

## I.      INTRODUCTION

1.      This is a Class Action Complaint ("Complaint") against King Hagerstown Motors LLC ("King Hagerstown"), King Volkswagen, LLC ("King Volkswagen"), King Buick GMC, LLC ("King Buick"), King Lincoln, Inc., King Auto of Silver Spring, LLC, and King Vehicles, LLC (hereinafter, collectively, "King Auto Group"), for violating, conspiring to violate, and aiding and abetting the violation of, the statutory and common law obligations governing motor vehicle sales that provide significant safeguards to the purchasers of used vehicles, as well as for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Maryland Consumer Protection Act ("CPA"), MD. CODE ANN., COM. LAW §§ 13-301 *et seq.*, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the Maryland common law.

2.      Named Plaintiffs and the Class are persons who purchased from one of Defendants' dealerships in Maryland a motor vehicle previously used for a non-consumer purpose, who were not provided notice of such use as required under Maryland law; that is, the used motor vehicle previously was used as a short-term rental without "clear and conspicuous" disclosure of such use.

3.      As the Maryland Motor Vehicle Administration ("MVA") recognized when it enacted the Code of Maryland Regulations ("COMAR") requiring disclosure of prior short-term rental use, many vehicle buyers seek to avoid vehicles used for short-term rentals because of the perception and expectation that these vehicles are driven hard by drivers who care little about them, may not have been well or consistently maintained, and more often are involved in accidents than vehicles used for personal, family, and household purposes.

4.      Defendants failed to disclose and intentionally concealed from Named Plaintiffs

and the Class the material fact that vehicles sold to them previously were used as short-term rentals. In so doing, Defendants violated a clear and explicit disclosure requirement governing motor vehicle sales in Maryland and caused damages and losses to Named Plaintiffs and members of the Class. This suit seeks to end Defendants' illegal sales practices and obtain compensation for the losses sustained by Named Plaintiffs and members of the Class.

5.      Defendants conspired among themselves, by agreement and understanding, to engage in the unlawful acts and omissions described herein.

6.      Defendants associated together under the non-incorporated "King Auto Group" umbrella to advertise, market and, upon information and belief, otherwise conduct business as one entity. All of the Defendants share the moniker "King" in their corporate names and jointly hold themselves out to the general public under the name King Auto. As described further below, Defendants jointly market and sell used vehicles on their own behalf and on behalf of each other without the mandatory disclosures required by Maryland law.

7.      Although "King Auto Group" is not registered with the Maryland Department of Assessments and Taxation, Defendants conduct business using this name and have established a central website, http://www.KingAuto.com. This joint website solicits business for and provides links to the websites of each entity within the King Auto Group and specifically advertises the entities' availability for auto sales or service in locations, *inter alia*, such as Gaithersburg and Hagerstown. http://www.KingAuto.com (retrieved January 9, 2014).

8.      Defendants not only jointly use the King Auto Group (or alternatively King Auto) moniker and the King Auto Group website to market and sell used vehicles, but as part of and in furtherance of their scheme, Defendants additionally use each of their individual websites to advertise their own used vehicles as well as the used vehicles owned by their co-conspirators.

Defendants' individual websites contain links to the websites of other Defendants, market the identical used vehicles (including vehicles previously used for short-term rentals) being sold on other Defendants' websites, and refer customers from one Defendant to another for information and sales.

9.      King Auto Group agreed to develop and use form documents, and used such form documents, in the course of its used vehicle sales.  In addition, Defendants associated together to present themselves to their customers and the world as one entity, even though the members of the King Auto Group association are separately incorporated.   As stated, Defendants market themselves through a common website and deliberately use the moniker "King Auto Group" and/or "King Auto" as a way of branding the dealerships and making themselves appear as part of a large umbrella entity that enjoys "family" ownership characteristics. This association is marketed as part of a large, legitimate enterprise that certainly would abide by Maryland law.

10.      Through their association, Defendants developed and agreed upon the uniform and systematic scheme described herein to acquire and sell prior short-term rental vehicles to buyers without the disclosures required by Maryland law, with misleading and fraudulent omissions and representations concerning the history of the used vehicles being sold, and with the specific intent to deceive and defraud Named Plaintiffs and members of the Class.  As a result of this scheme, Named Plaintiffs and members of the Class were damaged.

11.      The King Auto Group entities purchase a large number of used vehicles previously used as short-term rentals.   On information and belief, Defendants collectively negotiate favorable purchase agreements with multiple rental car companies.  Defendants also purchase a large number of rental vehicles through dealer auctions and from the general public and systematically place these vehicles on the used car lots of King Auto Group entities

alongside other used vehicles that were not used as short-term rentals.  At the time of the vehicle purchases by Named Plaintiffs and the Class, the King Auto Group took no steps to differentiate for its customers one car (the prior short-term rental) from the next (the vehicle previously used only for personal use).

12.     Because prior short-term rental vehicles are harder to sell and consistently result in a lower selling price, the King Auto Group entities conceal the prior use of these vehicles as short-term rentals at the point of purchase by uniformly and consistently failing to provide the buyer with a clear and conspicuous written disclosure of the vehicle's rental history as required by Maryland law.  Defendants' affirmative acts and concealments violate federal law, as well as Maryland's motor vehicle laws, common law, and consumer protection law.

13.     Defendants' violations of both federal and Maryland law, as well as their conduct in conspiring to violate, and aiding and abetting the violation of, Maryland law have enriched them unjustly at the expense of hundreds and potentially thousands of Maryland vehicle purchasers.

14.     King Auto Group's use of form vehicle sales agreements and other form documents to conceal the prior rental history of the vehicles sold to Named Plaintiffs and Class members, as well as its uniform non-disclosures and affirmative misrepresentations on those forms, make this case particularly suitable for resolution through a class action lawsuit.

15.      Upon information and belief, one or more of the owners of individual King Auto Group entities also enjoy at least a partial ownership interest in some or all of the remaining individual King Auto Group entities; in addition, various King Auto Group entities share, or obtain the benefit of, key management personnel from the other King Auto Group entities.

16.     The King Auto Group entities named as Defendants acted in concert to

accomplish, and jointly benefitted from, the fraudulent scheme described herein.

**II.     PARTIES**

17.     Named Plaintiff Michelle Ann Clay is a resident of Frederick County, Maryland.

18.     On August 11, 2010, Ms. Clay purchased a used 2007 Ford Focus from King Hagerstown pursuant to a contract that identifies King Hagerstown as "King Auto." An Internet search of the trade name "King Hagerstown Motors" in January, 2014 directs the searcher to the website www.KingAuto.com.   Unbeknownst to Named Plaintiff Michelle Clay at the time of sale, the vehicle she purchased previously was used for purposes other than as a consumer good. Defendants failed to disclose to Ms. Clay clearly and conspicuously that this vehicle previously was used for a purpose other than as a consumer good or, specifically, that it had been used as a short-term rental.  A copy of Ms. Clay's Buyer's Order is attached as **Exhibit A.**

19.     Named Plaintiff Agnita Kote is a resident of Montgomery County, Maryland.

20.     On or about August 18, 2012, Ms. Kote purchased a used 2008 Ford Focus from King Volkswagen.  Unbeknownst to Ms. Kote at the time of sale, the vehicle she purchased previously was used for purposes other than as a consumer good. Defendants failed to disclose to Ms. Kote clearly and conspicuously that this vehicle previously was used for a purpose other than as a consumer good or, specifically, that it had been used as a short-term rental.  A copy of Ms. Kote Buyer's Order is attached as **Exhibit B**.

21.     Named Plaintiff Veronica Blake Weinberger is a resident of Montgomery County, Maryland.

22.     On or about May 14, 2011, Ms. Weinberger purchased a used 2010 Ford Focus from King Kia of Silver Spring.  Unbeknownst to Ms. Weinberger at the time of sale, the vehicle she purchased previously was used for purposes other than as a consumer good. Defendants

failed to disclose to Ms. Weinberger clearly and conspicuously that this vehicle previously was used for a purpose other than as a consumer good or, specifically, that it had been used as a short-term rental.  A copy of Ms. Weinberger's Buyer's Order is attached as **Exhibit C.**

23.     Defendant King Hagerstown Motors LLC, t/a Hagerstown Ford and/or as King Auto and/or as King Hagerstown, is a Maryland entity whose principal place of business is located at 1714 Massey Boulevard, Hagerstown, Maryland 21740, which regularly engages in motor vehicle sales to Montgomery County residents.  King Hagerstown is an entity that owns and operates car dealerships located in the state of Maryland and is primarily engaged in selling new and used vehicles on its lot and on the Internet, both on its own behalf and on behalf of its co-conspirators.   Ms. Clay purchased her used vehicle from King Hagerstown.

24.     Defendant King Volkswagen, LLC, t/a King Volkswagen, is a Maryland entity whose principal place of business is located at 979 North Frederick Avenue, Gaithersburg, Maryland 20879, which regularly engages in motor vehicle sales in Montgomery County.  King Volkswagen owns and operates car dealerships located in the state of Maryland and is primarily engaged in selling new and used vehicles on its lot and on the Internet, on both its own behalf and on behalf of its co-conspirators.   Ms. Kote purchased her used vehicle from King Volkswagen.

25.     Defendant King Buick GMC, LLC, formerly known as King Pontiac Buick GMC, LLC, t/a King Buick GMC, is a Maryland entity whose principal place of business is located at 16200 South Frederick Avenue, Gaithersburg, Maryland 20877, which regularly engages in motor vehicle sales in Montgomery County.  King Buick GMC, LLC is an entity that owns and operates car dealerships located in the state of Maryland and is primarily engaged in selling new and used vehicles on its lot and on the Internet, both on its own behalf and on behalf of its co-

conspirators.

26.    Defendant King Lincoln, Inc., formerly known as King Lincoln-Mercury, Inc., t/a King Kia, is a Maryland corporation whose principal place of business is located at 953 North Frederick Avenue, Gaithersburg, Maryland 20879, which regularly engages in motor vehicle sales in Montgomery County. King Lincoln, Inc. is an entity that owns and operates car dealerships located in the state of Maryland and, upon information and belief, is primarily engaged in selling new and used vehicles on its lot and on the Internet, both on its own behalf and on behalf of its co-conspirators.

27.    Defendant King Auto of Silver Spring, LLC, formerly t/a as King Kia of Silver Spring and Kia of Silver Spring, is a Maryland corporation whose principal place of business was 3221 Automobile Boulevard, Silver Spring, Maryland 20904, which regularly engages or which regularly engaged in motor vehicle sales in Montgomery County.  King Auto of Silver Spring, LLC is an entity that owns and operates or owned and operated car dealerships located in the state of Maryland and is or was primarily engaged in selling new and used vehicles on its lot and on the Internet, both on its own behalf and on behalf of its co-conspirators.  Ms. Weinberger purchased her used vehicle from King Kia of Silver Spring.

28.    Defendant King Vehicles, LLC, t/a King Mitsubishi and/or King Mitsubishi Fuso, is a Maryland entity whose principal place of business is located at 16160 Frederick Road, Gaithersburg, Maryland 20877, which regularly engages in motor vehicle sales in Montgomery County. King Vehicles, LLC owns and operates car dealerships located in the state of Maryland and, upon information and belief, is or was primarily engaged in selling new vehicles on its lot and new and used vehicles on the Internet, both on its own behalf and on behalf of its co-conspirators.

III.     **JURISDICTION AND VENUE**

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

30.     Venue is proper in this District because, under 28 U.S.C. § 1391(b), a substantial part of the events or omissions giving rise to the claims herein occurred within this District, Named Plaintiffs reside in this District, and the Defendants all systematically and continually transact business in this District.

IV.     **FACTS APPLICABLE TO ALL COUNTS**

31.     This is an action against the Defendants resulting from their uniform and consistent failure to disclose that hundreds, if not thousands, of vehicles sold to buyers were prior short-term rentals; this action also results from Defendants' conspiracy to conceal and not disclose the rental history of those vehicles, and from their conduct in aiding and abetting the above-described unlawful conduct.

32.     King Auto Group acquires its inventory of used motor vehicles from a variety of sources, including direct purchases from buyers, auto auctions, and car rental companies.

33.     At the time a vehicle is purchased for resale on one of its lots located in the State of Maryland, Defendants know, and have information available to them, that identifies the prior use of the vehicle for short-term rentals.

34.     In accordance with the disclosure provisions of COMAR 11.12.01.14(M)(1), motor vehicle dealers in Maryland must disclose to a prospective purchaser a vehicle's prior use for any purpose other than as a consumer good "clearly and conspicuously" in writing.  This disclosure must specifically indicate, clearly and conspicuously, that the vehicle previously was used as a "short-term rental vehicle."

35.     For more than thirty years, COMAR (currently codified in 11.12.01.14(M)) has provided that:

(1)     **Vehicles formerly used for a purpose other than a consumer good shall be clearly and conspicuously identified as to their former use. This includes, but is not limited to, vehicles formerly used:**

(a)     For public or governmental purposes and normally driven by multiple drivers;
(b)     As executive driven vehicles;
(c)     As demonstrators;
(d)     For driver training;
(e)     As taxicabs; or
**(f)     As short-term rental vehicles.**

(2)     The word "commercial", or similar ambiguous terms, may not be used to describe these vehicles.

36.     Consequently, Maryland dealers must clearly and conspicuously disclose when the vehicles they offer for sale have been used as short-term rental vehicles.

37.     However, King Auto Group does not make this mandated disclosure to buyers. At all times relevant to this Complaint, it has been the standard practice of Defendants to mislead, conceal and otherwise fail to disclose to customers a vehicle's prior use as a short-term rental as required by Maryland law.

38.     Defendants are well aware of their duty to clearly and conspicuously disclose to retail buyers any prior short-term use of used vehicles.  However, King Auto Group upon information and belief has an unwritten but understood company-wide policy in effect at all of Defendants' dealerships that not only does not provide for clear and conspicuous disclosure of the former use of a used vehicle for a purpose other than as a consumer good, but affirmatively misleads customers into believing that vehicles previously used for short-terms rentals had no such prior use.

39.     Indeed, as part of the fraudulent scheme alleged herein, Defendants agreed to

employ, and did employ, standard sales agreements that contain a section expressly requiring disclosure of prior non-consumer vehicle use, including prior short-term rental use, reflecting their knowledge that Maryland law mandates such disclosure.

40.     But rather than provide a sales agreement form on which any disclosure of prior short-term rental use would be readily noticeable – for example, by making the disclosure in **LARGE BOLD PRINT** or in a **<span style="color:red">different color</span>** as the MVA contemplates in COMAR 11.12.01.14A(2) – Defendants deliberately designed their standard sales agreements in a manner calculated to *not* draw attention to any disclosure of prior rental or other commercial use, through what must be called a "non-disclosure disclosure." *See*, for example, the sales agreement form Defendant King Hagerstown provided to Named Plaintiff Ms. Clay, attached as Exhibit A. The print Defendants used to facilitate disclosure of prior rental use is measurably smaller than the print elsewhere on the sales agreement; no effort is made to draw the customer's attention to what purportedly is being disclosed about a vehicle's prior use.

41.     Regardless, instead of using the space designated on their own form contract to disclose to Named Plaintiffs and the Class the former short-term rental or other commercial use of their vehicles, Defendants provided Named Plaintiffs and the Class with false and misleading information in this space, informing them that their vehicles had *none* of the prior commercial uses listed on the form, including any prior use as a short-term rental vehicle.

42.     As part of its scheme to mislead customers into believing that vehicles used for prior short-term rentals were never put to such use, King Auto Group dealerships further agreed to employ, and from time to time did employ, a form entitled "Disclosure of Prior Vehicle Use for Dealership or Commercial Purposes" (hereafter "Prior Use Acknowledgment Form"). This form, which upon information and belief is provided to buyers only *after* they have signed the

sales agreement and thus become legally bound to purchase a vehicle, does not provide the "clear and conspicuous" disclosure of prior non-consumer use required by law.

43. Nonetheless, after obtaining the customer's signature on the vehicle sales contract, the King Auto Group provides its customer with a Prior Use Acknowledgment Form. This form contains a series of pre-printed boxes that Defendants may check to disclose, for example, if a vehicle previously has been used for leases or short-term rentals, as a taxicab, or for another non-consumer purpose. However, Defendants failed to disclose and affirmatively misrepresented on this form the prior rental use of the vehicles they sold to buyers.

44. By regularly and systematically failing to check any of the boxes on this form, King Auto Group concealed, and conspired to conceal, from Named Plaintiffs and Class members the material fact that the vehicles sold to them had no former use other than as consumer goods, had none of the prior commercial uses indicated on the form and, in particular, had not been used for prior short-term rentals.

45. Moreover, the Prior Use Acknowledgement Form also failed to clearly and conspicuously disclose prior short-term rental use because it obfuscated the information regarding the prior use of the vehicle by adding the ambiguous words "Rental/Lease Vehicle" to any disclosure of prior rental use.

46. King Auto Group's representations to Named Plaintiffs and Class members on their contracts of sale and/or Prior Use Acknowledgement Forms that the vehicles they were buying had not previously been used for prior short-term rentals constituted affirmative misrepresentations concerning the history of these vehicles. As part of the scheme alleged herein, Defendants uniformly and consistently failed to disclose in the designated pre-printed spaces on their Buyer's Orders and Prior Use Acknowledgment Forms that the vehicles being

sold had been used for prior short-term rentals.  However, even had Defendants made such a disclosure in these pre-printed spaces, such a disclosure would not have constituted the "clear and conspicuous" disclosure of prior short-term rental use required by COMAR 11.12.01.14(M).

47.     As a result, Defendants committed overt acts in furtherance of the fraudulent scheme and conspiracy alleged herein by: (1) failing to clearly and conspicuously disclose and by concealing prior rental use on the vehicle sales agreements of Named Plaintiffs and the Class; and (2) failing to disclose and concealing the prior short-term rental use of vehicles on the Prior Use Acknowledgement Forms typically (but not always) provided to Named Plaintiffs and the Class.

48.     Just as Defendants King Hagerstown, King Volkswagen, and King Kia of Silver Spring failed to provide clear and conspicuous disclosure to Named Plaintiffs of the prior short-term rental use of the used vehicles sold to them in the vehicle transactions described above, *supra*, their co-conspirators failed to provide clear and conspicuous disclosure in the *same* manner using the *same* form documents to numerous other putative Class members.  All of the King Auto Group Defendants who were a part of this fraudulent scheme failed to provide clear and conspicuous disclosure of the rental history of the used vehicles sold to Class members. The following chart sets forth details of additional transactions in which Defendants misrepresented and/or concealed the prior short-term rental use of vehicles sold to putative Class members:

| Defendant | Approx. Vehicle Sale Date | Vehicle Description | Vehicle Identification Number ("VIN") |
| --- | --- | --- | --- |
| **King Volkswagen** | 1/27/10 | 2008 Volkswagen Jetta S | 3VWJZ71K78M059961 |
| King Volkswagen | 3/4/10 | 2008 Mazda Mazda6I | 1YVHP80C285M00223 |
| King Volkswagen | 4/10/10 | 2008 Kia Spectra EX/LX | KNAFE121785544840 |
| King Volkswagen | 4/23/10 | 2009 Kia Sedona EX/LX | KNDMB233896272500 |

| | | | |
|---|---|---|---|
| King Volkswagen | 1/7/11 | 2009 Kia Rondo LX/EX | KNAFG528397251439 |
| **King Hagerstown** | 2/19/10 | 2008 Hyundai Accent | KMHVN46CX8U179154 |
| King Hagerstown | 7/20/10 | 2009 Chevrolet HHR LT | 3GNCA53V89S586314 |
| King Hagerstown | 12/7/10 | 2009 Ford Fusion SEL | 3FAHP08179R116245 |
| King Hagerstown | 1/13/11 | 2010 Ford Econoline E350 Super Duty | 1FBNE3BL2ADA21818 |
| King Hagerstown | 2/8/11 | 2010 Ford Fusion SE | 3FAHP0HA3AR132396 |
| King Hagerstown | 2/22/11 | 2010 Ford Focus SE | 1FAHP3FN3AW111133 |
| King Hagerstown | 9/7/09 | 2008 Ford Explorer | 1FMEU73E88UA62434 |
| **King Auto of Silver Spring, LLC** | 5/19/10 | 2009 Mazda Mazda5 | JM1CR293290340422 |
| King Auto of Silver Spring | 6/1/10 | 2009 Chrysler Sebring Touring/Limited | 1C3LC56B39N517551 |
| King Auto of Silver Spring | 6/5/10 | 2008 Ford Fusion SE | 3FAHP07128R260141 |
| King Auto of Silver Spring | 6/25/10 | 2009 Chrysler 300 Touring | 2C3KA53V59H621838 |
| King Auto of Silver Spring | 7/8/10 | 2009 Kia Spectra EX/LX | KNAFE221895596856 |

| | | | |
|---|---|---|---|
| **King Buick** | 3/17/11 | 2008 Saturn Outlook | 5GZEV23738J148126 |
| King Buick | 2/18/12 | 2010 Daimler Dodge Caliber SXT | 1B3CB4HA7AD655943 |
| King Buick | 5/30/11 | 2010 Mazda3l | JM1BL1SF3A1307150 |
| King Buick | 10/26/11 | 2010 Chevrolet Impala LT | 2G1WB5EK7A1247607 |
| King Buick | 4/18/11 | 2010 Ford Explorer XLT | 1FMEU7DE6AUA37827 |
| **King Lincoln Mercury, Inc.** | 3/14/09 | 2008 Kia Sportage | KNDJE723687495801 |
| King Lincoln Mercury, Inc. | 11/21/09 | 2009 Kia Sedona | KNDMB23359277251 |
| King Lincoln Mercury, Inc. | 3/14/09 | 2007 Kia Sportage | KNDJE723777402704 |
| King Lincoln Mercury, Inc. | 1/5/10 | 2008 Daimler Dodge | 1D8HN54PX8B16505 |

49.     Defendant King Vehicles, Inc. is not included in the above chart because, upon information and belief, this Defendant did not sell prior short-term rental vehicles in its own name but, rather, routinely sold these vehicles through its King Auto Group co-conspirators.  As a result, although King Vehicles, Inc. marketed prior rentals to buyers, other King Auto Group Defendants consummated these sales on behalf of this Defendant as part of and in furtherance of Defendants' conspiracy, agreements, and aiding and abetting of one another's illegal acts as set forth in this Complaint.

50.     Defendants further participated in the above-described conspiracy by, among other things, agreeing to market, and by marketing, other Defendants' used vehicles on their websites, by jointly advertising the identical vehicle with the identical VIN simultaneously on more than one Defendant's website, by agreeing to refer and by referring customers from one Defendant's website to another Defendant's website, by providing contact information from which a customer could obtain additional information concerning a used vehicle owned by that co-conspirator, and by offering Carfax reports on used vehicles owned by co-conspirators which contain embedded links that, when clicked, take the customer either directly to the website of their co-conspirator or to the common KingAuto.com website.

51.     By way of example, King Hagerstown furnishes Carfax reports for certain used vehicles offered for sale by: (1) King Buick, (2) King Volkswagen, (3) King Vehicles LLC, and (4) King Lincoln, Inc.  In doing so, King Hagerstown assists all of these Defendants in King Auto Group's fraudulent scheme to cheat buyers. King Hagerstown knows that its co-conspirators intend to use, and in fact use, these reports as part of their scheme to misrepresent, conceal and camouflage the prior short-term rental use of the vehicles they sell instead of clearly and conspicuously disclosing such prior rental use to buyers as is required by Maryland law.

52.     In addition, King Buick furnishes Carfax reports for certain used vehicles offered for sale by King Lincoln, Inc., and by King Volkswagen; and King Volkswagen furnishes certain Carfax reports for vehicles offered for sale by King Lincoln, Inc.

53.     Another example of Defendants' cooperation and assistance to one another in selling prior short-term rentals without disclosing this prior use to buyers is their agreement concerning, and participation in, the cross-marketing and cross-selling of these vehicles. Between August 5, 2010 and January 7, 2011, *King Volkswagen* first offered for sale a prior short-term rental – a used 2009 Kia Rondo, VIN KNAFG528397251439.   On December 21, 2010, the *same* prior rental vehicle was offered for sale by *King Hagerstown*.   Finally, on January 7, 2011, *King Volkswagen* sold this *same* prior rental vehicle to a putative Class member.  Upon information and belief, all three of these Defendants understood that this vehicle would be sold using standard King Auto Group forms that did not clearly and conspicuously disclose the prior short-term rental use of the vehicle, and they cooperated with each other in effectuating this sale.

54.     Moreover, when King Volkswagen sold this prior short-term rental vehicle, it did so using the Maryland State Safety Inspection Certificate for this vehicle of yet another co-conspirator, King Lincoln Mercury (now known as King Lincoln).

55.     By way of further example, on September 8, 2009, *King Buick* offered for sale a 2008 Mazda, VIN 1YVHP80C285M00223 – a prior short-term rental.  On February 4, 2010, *King Volkswagen* offered this identical vehicle for sale and then, on March 4, 2010, it sold this vehicle to a putative Class member.

56.     Additionally, Defendants *King Lincoln* (formerly King Lincoln Mercury) and *King Volkswagen* are treated as a single entity in title reports.  For example, the title report for a

2007 Kia Rondo, VIN KNAFG52697711844, states that "King Lincoln Mercury/Volkswagen" purchased this vehicle from Enterprise Leasing Co., which was re-sold to buyer Amarjit Singh Deol on September 23, 2009.  King Volkswagen then applied for the Certificate of Title for this vehicle even though it did not sell this vehicle.

57.     A final example of Defendants' cooperation and assistance to one another in the sale of prior-short term rental vehicles without the disclosures required by Maryland law is their sale of a 2006 Porsche Cayenne S, VIN WP1AB29P064023, on or about December 18, 2010. Although **King Lincoln Mercury** (now, King Lincoln) sold this vehicle and executed the Buyer's Order, its co-conspirator **King Volkswagen** applied for the Certificate of Title for the vehicle.

58.     By applying for the title of a vehicle sold by its co-conspirator, King Volkswagon assisted King Lincoln Mercury in selling this short-term rental vehicle and, upon information and belief, incurred the cost of titling this vehicle by paying the title and registration fees, as well as taxes, related to this sale.

59.     Based on the foregoing, King Volkswagen consummates the sales of prior short-term rentals by its co-conspirator King Lincoln.

60.     The foregoing transactions are a small sampling of Defendants' cooperation and agreement to market and sell short-term rental vehicles that cannot be sold within acceptable time periods.  Pursuant to an agreement among Defendants to assist one another in unlawfully selling such vehicles, Defendants have established procedures and understandings governing the transfer and exchange of short-term rentals.

61.     Defendants' cross-marketing, cooperation to sell vehicles, and commingling and/or sharing of inventory and Carfax reports is evidence of their joint agreements and use of common procedures and documents to unlawfully sell such used vehicles without the disclosures

required by Maryland law.

62.     Defendants' cross-marketing and commingling and/or sharing of inventory and Carfax reports also is evidence of their assistance, aid, and substantial encouragement to one another in their sale of used vehicles without the disclosures required by Maryland law.

63.     Upon information and belief, Defendants share certain operating expenses and/or profits associated with, among other things, their joint marketing, shared inventories, cross-selling of used vehicles, shared management, and the costs of acquiring and furnishing Carfax reports for one another.

64.     At all times relevant to this Complaint, Defendants were aware that the law required clear and conspicuous disclosure of the rental history of a used vehicle and knew that the failure to disclose to retail purchasers such prior use in a clear and conspicuous manner was illegal.

65.     Each Defendant possessed knowledge that King Hagerstown, King Volkswagen, King Kia of Silver Spring, and the other Defendants routinely misled Named Plaintiffs and Class members and routinely failed to clearly and conspicuously disclose and misrepresented to buyers the prior short-term rental use of used vehicles offered for sale and sold to the retail public.

66.     As stated, Defendants all used the identical, or nearly identical, form vehicle sales agreements.  These agreements included a space specifically designated for the disclosure of the prior non-consumer use of the vehicles being sold, which Defendants knew did not provide the clear and conspicuous disclosure of prior short-term rental or other commercial use required by Maryland law.

67.     Even so, upon information and belief, each Defendant routinely failed to use this space to identify the prior short-term rental use of the vehicles it sold to retail buyers and knew

the other King Auto Group Defendants failed to do so as well.  Upon information and belief, Defendants instead regularly used this space in their form vehicle sales agreements to mislead Named Plaintiffs and the Class and misrepresent the vehicles sold to Named Plaintiffs and the Class as having no prior short-term rental use.

68.    Upon information and belief, Defendants employed the same or similar methodologies for identifying, or failing to identify, vehicles formerly used for a purpose other than as a consumer good in their marketing and sales, and were aware that none of the Defendants were clearly and conspicuously disclosing prior short-term rental use of vehicles to buyers before purchase as required by Maryland law.

69.    Upon information and belief, Defendants knew this practice of misleading buyers and concealing and misrepresenting the rental history of the used vehicles sold to Named Plaintiffs and Class members was uniform throughout all of the King Auto Group dealers.

70.    By jointly marketing and cross-selling one another's used vehicles, using the same form documents in their sales with inadequate disclosure of prior short-term rental, sharing management personnel and operating expenses and profits, developing and implementing the King Auto Group policy governing disclosure of former short-term rental use of vehicles, furnishing Carfax reports for each other, and referring customers between dealerships, Defendants provided substantial assistance, aid and encouragement to each other in misrepresenting, concealing and failing to disclose the material rental history of the used vehicles sold by one another, including King Hagerstown, King Volkswagen and King Kia of Silver Spring.

71.    Defendants knowingly aided, assisted and encouraged each other in their violations of Maryland law by undertaking the acts alleged herein.  In particular, Defendants

knowingly aided, assisted and encouraged King Hagerstown, King Volkswagen and King Kia of Silver Spring as well as one another, to violate their respective obligations under Maryland law to disclose the prior short-term rental use of the vehicles sold to Named Plaintiffs and other Class members by joining together to engage in the above-described conduct, with the knowledge that their aid, assistance and encouragement to one other would contribute to the commission of tortious acts by the others, including but not limited to a violation of COMAR 11.12.01.14(M).

72.      These facts further indicate that all of the Defendants were involved in the transactions of Named Plaintiffs as co-conspirators and joint-tortfeasors.  As a result, when King Hagerstown, King Volkswagen and King Kia of Silver Spring misled Named Plaintiffs and the Class and failed to disclose and concealed from Named Plaintiffs and the Class the prior rental use of the vehicles they were purchasing, they did so as part of a conspiracy, scheme and concerted action in which all of Defendants participated with their knowledge and consent, as well as with the aid and encouragement of one another.

73.      Upon information and belief, pursuant to Defendants' above-referenced agreement to market and sell used vehicles, Defendants benefited from the profits derived from the sale of used vehicles without the clear and conspicuous disclosure of prior short-term rental use required by Maryland law.

74.      Upon information and belief, Defendants not only associated as King Auto Group and engaged in the above-described conspiracy to jointly benefit and profit, but did so to advance each Defendant's own individual interest in the above-described conspiracy and to increase illegally the individual profits, advantage and personal gain of each Defendant.

75.      Indeed, as stated, Defendants traded and exchanged vehicles previously used for short-term rentals among themselves when they were unable to sell these vehicles within an

acceptable period of time in an effort to retail difficult-to-sell prior rentals, all as part of their conspiracy to help one another market and sell these vehicles and earn illicit profits through the sale of these vehicles without the disclosures mandated by Maryland law.

76.     Upon information and belief, each Defendant and/or its respective owners and/or employees had an independent personal stake in its own particular corporation and its profitability, including but not limited to the illegal profits and/or commissions that could be obtained from buyers by selling used vehicles without clearly and conspicuously disclosing a vehicle's previous short-term rental use.

77.     Upon information and belief, payments by Named Plaintiffs and the Class to one Defendant actually resulted in separate monetary or other benefits to other Defendants resulting from their conspiracy and association as King Auto Group.  Defendants and/or their employees, agents or representatives had both an individual and a collective profit motive in selling prior short-term rental vehicles without disclosing such prior use to buyers.

78.     Upon information and belief, the greater the number of used vehicles sold by an individual Defendant without disclosing the prior rental history of such vehicles, the greater the benefit, gain and/or profits to other Defendants and/or to their employees, agents or representatives as a result of the above-described cross-marketing, cross-selling and shared used vehicle inventories and Carfax reports, among other things.

79.     As a result of King Auto Group's scheme to sell prior short-term rentals without the disclosures required by Maryland law, and the other acts, material omissions, affirmative misrepresentations and unfair and deceptive practices described herein, Named Plaintiffs and Class members were induced to enter into their transactions and paid significantly more for their vehicles than they were worth.

## V.   FACTS APPLICABLE TO NAMED PLAINTIFFS

### A.   Michelle Clay

80.     On or about August 11, 2010, Named Plaintiff Michelle Ann Clay purchased a used 2007 Ford Focus, VIN 1FAFP34N37W225684, from King Hagerstown primarily for personal, family and household use.

81.     Upon information and belief, this vehicle was advertised on one or more, if not all, of Defendants' websites.

82.     Upon information and belief, each Defendant offered to sell the used 2007 Ford Focus, VIN 1FAFP34N37W225684, on its website; as a result, each Defendant was legally capable of selling this vehicle to Ms. Clay and of providing, or failing to provide, the disclosures of prior short-term rental use required by Maryland law.

83.     Unbeknownst to Michelle Clay on the date of sale, the vehicle previously was titled in the name of a rental car company and previously was used for short-term rentals. Defendants had actual knowledge of this information but misled Ms. Clay and did not disclose and intentionally and with actual malice concealed, and conspired to conceal, this information from Ms. Clay.

### B.   Agnita Kote

84.     On or about August 18, 2012, Named Plaintiff Agnita Kote purchased a used 2008 Ford Focus, VIN 1FAHP35N18W176297, from King Volkswagen primarily for personal, family and household use.

85.     This vehicle was advertised on one or more, if not all, of Defendants' websites.

86.     Upon information and belief, each Defendant offered to sell the used 2008 Ford Focus, VIN 1FAHP35N18W176297, on its website; as a result, each Defendant was legally

capable of selling this vehicle to Ms. Kote and of providing, or failing to provide, the disclosures of prior short-term rental use required by Maryland law.

87.     Unbeknownst to Agnita Kote on the date of sale, the vehicle previously was titled in the name of a rental car company and previously was used for short-term rentals. Defendants had actual knowledge of this information but misled Ms. Kote and did not disclose and intentionally and with actual malice concealed, and conspired to conceal, this information from Ms. Kote.

### C.     Veronica Blake Weinberger

88.     On or about May 14, 2011, Named Plaintiff Veronica Blake Weinberger purchased a used 2010 Ford Focus, VIN 1FAHP3GN9AW226236, from King Kia of Silver Spring primarily for personal, family and household use.

89.     Upon information and belief, this vehicle was advertised on one or more, if not all, of Defendants' websites.

90.     Upon information and belief, each Defendant offered to sell the used 2010 Ford Focus, VIN 1FAHP3GN9AW226236 on its website; as a result, each Defendant was legally capable of selling this vehicle to Ms. Weinberger and of providing, or failing to provide, the disclosures of prior short-term rental use required by Maryland law.

91.     Unbeknownst to Veronica Blake Weinberger on the date of sale, the vehicle previously was titled in the name of a rental car company and previously was used for short-term rentals. Defendants had actual knowledge of this information but misled Ms. Weinberger  and did not disclose and intentionally and with actual malice concealed, and conspired to conceal, this information from Ms. Weinberger.

92.     Defendants were required by Maryland law and, in particular, COMAR

11.12.01.14(M)(1)(f), to disclose clearly and conspicuously in writing to Ms. Clay, Ms. Kote, and Ms. Weinberger before purchase that their vehicles previously were used for short-term rentals. Nevertheless, Defendants failed to provide the required clear and conspicuous written disclosure concerning the prior use of the vehicles of Named Plaintiffs and other members of the Class on: (i) the vehicle sales agreement, (ii) the Prior Use Acknowledgment Form, or (iii) any other document; and Defendants conspired together to mislead Named Plaintiffs and the Class and aided, abetted and encouraged one another to conceal and misrepresent the prior history of these vehicles.

93.     Unbeknownst to Named Plaintiffs and the other members of the Class on the date of sale, the vehicles sold to them would not pass without objection in the trade under the contract description, in part because the sales documents falsely represented the vehicle's prior rental history. Accordingly, the vehicles were unmerchantable under Maryland law.

94.     As a result of Defendants' acts and omissions as set forth in this Complaint, Named Plaintiffs and other members of the Class were misled as to the prior use of the vehicles and their market values, paid more for the vehicles than they were worth, were denied the opportunity to decline to purchase vehicles previously used for short-term rentals, lost the benefit of their bargains, and have sustained other losses and damages.

95.     As part of their regular business practices in Maryland, Defendants systematically and regularly sell, and have conspired to sell, and systematically have aided and abetted their co-conspirators to sell, used vehicles that previously were used as short-term rental vehicles by: (a) misleading customers about the prior short-term rental use of their vehicles; (b) failing to clearly and conspicuously disclose such prior use; and (c) affirmatively concealing such prior use from their customers.

96.     In connection with the activities giving rise to this action, Defendants acted with actual malice, intent and knowledge, and with a wanton disregard for the rights of Named Plaintiffs and other purchasers.

97.     At all times relevant to this Complaint, Defendants conspired with each other to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiffs and Class members, and aided and abetted one another in these activities, all as proscribed by Maryland law.

98.     The King Auto Group conspiracy described herein has operated continuously for at least the past five years and has affected numerous consumer transactions through the use of common misleading procedures and form documents that intentionally contained false information and omitted material facts, required by law to be disclosed.  Defendants participated and engaged in the conspiracy and were involved in the transactions involving Named Plaintiffs and other members of the Class over a period spanning at least five years and involving hundreds if not thousands of transactions.

99.     If Named Plaintiffs and Class members then had suspected that Defendants were engaged in the fraudulent scheme described herein, at the expense of Named Plaintiffs and Class members, they would have refused to conduct business with Defendants, would not have entered into transactions with King Auto Group or Defendants, and would have sought to secure their rights under the law at that time.

100.    Named Plaintiffs' and Class members' injuries to their property further were caused by Defendants' fraudulent scheme and conspiracy in that Named Plaintiffs and Class members were overcharged for their vehicles; upon information and belief, the profits obtained through the fraudulent scheme and conspiracy were split amongst the conspirators according to a

prior written contract or other agreement or understanding and used to market the King Auto

Group entities as an excellent source of reliable used vehicles sold by reputable family dealers.

## VI.    CLASS ACTION ALLEGATIONS

101.    Named Plaintiffs bring this action individually and as a class action pursuant to

Fed. R. Civ. P. 23 on behalf of a class (the "Class") defined as follows:

> All persons who purchased from a King Auto Group dealership in
> Maryland a used motor vehicle previously used as a short-term
> rental, who were not provided clear and conspicuous disclosure of
> such use.

102.    Excluded from the Class are those individuals who now are or ever have been

King Auto Group executives and the spouses, parents, siblings and children of all such

individuals.

103.    This Complaint covers the time period up to the resolution of this case.  The

statutes of limitations under each cause of action asserted herein are inapplicable to the Class

members' claims based on the acts of omission and wrongful conduct by Defendants, as set forth

herein, which equitably tolled the limitations period(s) under the circumstances described herein.

104.    Named Plaintiffs and other members of the Class, despite the exercise of due

diligence, and due to their reliance on the accuracy and truthfulness of documents provided by

Defendants, did not and could not have discerned their causes of action against Defendants due

to Defendants' fraudulent concealment of the prior rental history of the vehicles sold to Named

Plaintiffs and the Class.

105.    Named Plaintiffs and Class members failed to discover the facts that are the basis

for their claims because the documentation Defendants provided to them purported to give them

all necessary legal disclosures regarding the prior use of their vehicles, creating a false sense of

security and preventing Named Plaintiffs and Class members from becoming aware of a need or

reason for inquiry into the adequacy, truthfulness or completeness of the disclosures received from Defendants prior to the purchase of their vehicles.

106.    Named Plaintiffs and Class members were not aware of any facts that should have provoked their inquiry.

107.    The Class, as defined above, is identifiable.  Named Plaintiffs are members of the Class.

108.    On information and belief, the Class consists of hundreds and perhaps thousands of individuals and thus is so numerous that joinder of all members is impracticable.

109.    There are questions of law and fact that not only are common to the Class, but predominate over any questions affecting only individual Class members.  The common and predominating questions include, but are not limited to:

a.      Whether Defendants failed to provide clear and conspicuous notice in writing to customers of the vehicles' prior use as short-term rentals;

b.      Whether Defendants affirmatively concealed from their customers the vehicles' prior use as short-term rentals;

c.      Whether Defendants conspired together to mislead, conceal and misrepresent in a systematic and uniform way the prior short-term rental history of vehicles sold by their dealerships;

d.      Whether Defendants conspired together to develop and use form documents geared to mislead customers and/or conceal the prior rental history of vehicles sold by their dealerships;

e.      Whether Defendants are liable to Named Plaintiffs and members of the Class for damages resulting from their pattern of selling vehicles that previously were

used as short-term rentals without disclosing this information to their customers;

f.      Whether Defendants had knowledge that the vehicles sold previously were used as short-term rentals or for purposes other than as consumer goods;

g.      Whether declaratory and injunctive relief is proper to prevent Defendants from continuing to sell vehicles that previously were used as short-term rentals without disclosure to prospective customers;

h.      Whether Defendants' failure to disclose the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

i.      Whether Defendants' affirmative concealment of the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

j.      Whether Defendants negligently misrepresented the value of vehicles previously used for short-term rentals to their customers;

k.      Whether Defendants negligently failed to disclose the vehicles' prior use for short-term rentals to their customers;

l.      Whether under an implied warranty, a vehicle would pass without objection in the trade under the contract description when Defendants misrepresented the vehicle's prior use as a short-term rental on the sales documents;

m.      Whether Defendants conspired to engage in the violations of Maryland law described herein;

n.      Whether Defendants tortiously aided and abetted the violations of Maryland law described herein;

o.      Whether Defendants engaged in a pattern of "racketeering activity" as defined by § 1961(5) of 18 U.S.C. § 1961 *et seq.*; and

p.      Whether the statutes of limitations applicable to each of the causes of action asserted herein have been equitably tolled by Defendants' wrongful or fraudulent concealment, despite due diligence of Named Plaintiffs and members of the Class.

110.   The claims of the Named Plaintiffs are typical of the claims of each member of the Class within the meaning of FED. R. CIV. P. 23(a)(3), and are based on and arise out of similar facts constituting Defendants' wrongful conduct.

111.   Named Plaintiffs will fairly and adequately protect the interests of the Class. Named Plaintiffs have no conflicts of interest with the Class.

112.   The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of FED. R. CIV. P. 23 (b)(1)(A).

113.   Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of FED. R. CIV. P. 23 (b)(2).

114.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of FED. R. CIV. P. 23 (b)(3).  The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

115.   Named Plaintiffs' counsel are experienced and competent in class actions and complex consumer litigation and foresee little difficulty in the management of this case as a class action.

## VII.   CIVIL RICO SUMMARY

116.   At all times relevant to this Complaint, the "enterprise" King Auto Group, a non-incorporated, informal association-in-fact formed by the Defendants, operated separately and distinct from each of the individual Defendants.

117.   In contrast to the association-in-fact enterprise "King Auto Group," all of the Defendants were entities capable of holding a legal or beneficial interest in property, had physical places of business, and had officers and employees.

118.   By agreements and understandings between and among King Hagerstown, King Volkswagen, King Kia of Silver Spring and the other King Auto Group car dealers taking part in the scheme, Defendants formed this association-in-fact Enterprise, as defined by 18 U.S.C. §§ 1961(4).

119.   Defendants knowingly participated in the scheme described herein to defraud Named Plaintiffs and the Class by misleading them and by concealing and failing to disclose the prior rental use of the vehicles they sold, and they used the U.S. mails and electronic or telephonic communications for the purpose of executing this scheme.

120.   Defendants and King Auto Group were engaged in, and affected, interstate commerce in that, *inter alia*, the vehicle sales that are the subject of their scheme to defraud were consummated in Maryland using vehicles that in many circumstances were purchased out-of-state for sale in Maryland. In many instances, Defendants wired funds or mailed checks from Maryland to persons outside of Maryland to pay for prior short-term rentals later sold within Maryland.  In other instances, transactions were funded by wire or check or electronic credit or debit transactions that originated from, or were transmitted to, a party located outside of

Maryland.   Additionally, the U.S. mails and/or wires were utilized in connection with the acquisition, marketing and sale of the vehicles that are the subject of this Complaint.

121.    In furtherance of their fraudulent scheme, King Hagerstown, King Volkswagen and King Kia of Silver Spring also on numerous occasions used and caused to be used mail depositories of the U.S. Postal Service both by placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matters from said depositories.   These mailings included, but were not limited to, the mailing by Defendants of documents related to the registration of motor vehicles purchased and sold by Defendants with the MVA; the distribution of illicit proceeds of the racketeering conspiracy; the mailing and distribution among Defendants of contracts, form sale and credit agreements, and other documents used in the transactions of Named Plaintiffs and the Class; and the mailing of additional documents that facilitated and furthered the operation of Defendants' fraudulent scheme.

122.    During all relevant times, and in furtherance of and for the purpose of executing the fraudulent scheme described herein, King Hagerstown, King Volkswagen and King Kia of Silver Spring also used the wires to execute the above-described fraudulent scheme. King Hagerstown, King Volkswagen and King Kia of Silver Spring and their co-conspirators on hundreds if not thousands of occasions used, and caused to be used, telephone, Internet and other wire transmissions including, but not limited to, use of the wires in the sale of vehicles previously used as prior short-term rental vehicles to Named Plaintiffs and members of the Class; in the emailing, faxing and transmission by wire of documents such as loan applications, vehicles sales and financing contracts and other documents related to the sale and financing of vehicles by Defendants to potential assignees in the transactions of Named Plaintiffs and Class members

who financed their vehicles with Defendants; in the electronic registration and titling system established with the MVA; and in the marketing of their enterprise "King Auto Group" and its vehicles on the Internet – with the intent to defraud and in furtherance of their scheme to defraud.

123.     For example, King Hagerstown, King Volkswagen and King Kia of Silver Spring used the wires to market their goods and services under the King Auto Group brand and to market the vehicles they sold via the Internet and via the www.KingAuto.com and associated websites. King Hagerstown, King Volkswagen and King Kia of Silver Spring used the Internet and the wires in connection with the sales of hundreds, if not thousands, of vehicles sold to members of the Class by providing a forum in which customers could search for and receive information regarding vehicles offered for sale by Defendants, including the prior rental vehicles sold by Defendants.

124.     Upon information and belief, on or before August 11, 2010, King Hagerstown used the wires to advertise the vehicle sold to Ms. Clay on the Internet, without the required clear and conspicuous disclosure of this vehicle's prior use as a short-term rental required by Maryland law.

125.     On or before August 18, 2012, King Volkswagen used the wires to advertise the vehicle sold to Ms. Kote on the Internet, without the required clear and conspicuous disclosure of this vehicle's prior use as a short-term rental required by Maryland law.

126.     Upon information and belief, on or before May 14, 2011, King Kia of Silver Spring also used the wires to advertise the vehicle sold to Ms. Weinberger on the Internet, without the required clear and conspicuous disclosure of this vehicle's prior use as a short-term rental required by Maryland law.

127.    Upon information and belief, Defendants used the wires to advertise the vehicles of hundreds if not thousands of other buyers in the same way.

128.    Defendants also used the wires to advertise to putative Class members the vehicles previously used as short-term rentals (without disclosure of prior rental use) as set forth in the chart found in ¶ 48 herein.

129.    King Hagerstown, King Volkswagen, and King Kia of Silver Spring further used the wires to send and receive purchase orders, retail installment contracts, and other documents to and among their co-conspirators, funding lenders, and other entities; to distribute money among those entities; to transmit to the MVA information related to the registration and titling of motor vehicles purchased and sold by Defendants to Named Plaintiffs and members of the Class; to transmit among the Defendants forms and other documents used in the sale of vehicles; to send and receive marketing information and payment to local media for the placement and purchase of advertising in local print and electronic media regarding vehicles sold by Defendants, including vehicles previously used as prior short-term rentals but not disclosed as such as required by Maryland law; and to send and receive information regarding prior short-term rental vehicles with sellers of such vehicles, including auctions, other dealers, and rental car companies.

130.    Upon information and belief, in or about August of 2010, ***King Hagerstown*** used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents related to the sale to a potential assignee for the financing of Michelle Clay's vehicle – namely M&T Credit Corp., headquartered in New York, which lists a current address of 1 Fountain Plaza, Buffalo, N.Y. 14203. Upon further information and belief, following the sale to Ms. Clay,

King Hagerstown used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Clay's vehicle to its assignee, M&T Credit Corporation.

131.    In addition, upon information and belief, in or about August or September of 2010, King Hagerstown used the wires to register and title Ms. Clay's vehicle through an electronic registration and titling system.   In particular, King Hagerstown used the wires to electronically transfer $678.17 of funds to the MVA in connection with Ms. Clay's transaction for the payment of sales tax, titling and registration fees.

132.    Upon information and belief, in or about August 2012, *King Volkswagen* also used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents related to the sale to a potential assignee for the financing of Agnita Kote's vehicle – namely JPMorgan Chase Bank, then headquartered in New York, which lists a current address of 1111 Poloris Pkwy, Columbus, Ohio 43240.

133.    Upon further information and belief, following the sale to Ms. Kote, Defendants used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Kote's vehicle to its assignee, JPMorgan Chase Bank.

134.    In or about August 2012, King Volkswagen further used the wires to register and title Ms. Kote's vehicle through an electronic registration and titling system.   In particular, on or about August 18, 2012, King Volkswagen used the wires to electronically transfer $ 906.43 of funds to the MVA in connection with this transaction for payment of sales tax, titling and registration fees.

135.    Upon information and belief, in or about May 14, 2011, *King Kia of Silver Spring* used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents related to the sale to a potential assignee for the financing of Veronica Blake

Weinberger's vehicle – namely Suntrust Bank, headquartered in Atlanta Georgia, which lists a current address of 303 Peachtree Street, N.E., 36th floor, Atlanta, GA. 30308. Upon further information and belief, following the sale to Ms. Weinberger, King Kia of Silver Spring used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Weinberger's vehicle to its assignee, Suntrust Bank.

136.    In addition, upon information and belief, in or about May of 2011, King Kia of Silver Spring used the wires to register and title Ms. Weinberger's vehicle through an electronic registration and titling system.  In particular, on or about May 14, 2011, King Kia of Silver Spring used the wires to electronically transfer $198.00 of funds to the MVA in connection with Ms. Weinberger's transaction for the payment of titling, registration and lien fees.

137.    Upon information and belief, in or about March 2011, ***King Buick*** additionally used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents pertaining to an undisclosed prior short-term rental vehicle sold to a buyer by the name of Comfort Kaakyire; King Buick used the wires to transmit to a potential assignee documents relating to the financing of Ms. Kaakyire's transaction – namely Ally Financial, headquartered in Detroit, Michigan, which lists a current address of 200 Renaissance Center, Detroit, MI 48265. Upon further information and belief, following the sale to Ms. Kaakyire, King Buick used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Kaakyire's vehicle to its assignee, Ally Financial.

138.    In addition, in or about March 2011, King Buick used the wires to register and title Ms. Kaakyire's vehicle through an electronic registration and titling system.  In particular, on March 17, 2013, King Buick used the wires to electronically transfer $455.88 of funds to the MVA in connection with this transaction for payment of sales tax, titling and registration fees.

139.    Similarly, upon information and belief, on or about February 2012, **King Buick** used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents pertaining to an undisclosed prior short-term rental vehicle sold to a buyer by the name of Latechia Chambers; King Buick used the wires to transmit to a potential assignee documents relating to the financing of Ms. Chambers' transaction – namely Capital One Auto Finance ("Capital One"), headquartered in McLean, Virginia, which lists a current mailing address of 1680 Capital One Drive, McLean, VA 22102.  Upon further information and belief, following the sale to Ms. Chambers, King Buick used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Chamber's vehicle to its assignee, Capital One.

140.    In or about February 2012, King Buick once again used the wires to register and title Ms. Chamber's vehicle through an electronic registration and titling system. In particular, on February 18, 2012, Defendants used the wires to electronically transfer $587.95 of funds to the MVA in connection with this transaction, for payment of sales tax, titling and registration fees.

141.    Defendants further used the U.S. mails and wires to carry out each of the transactions identified in the chart found in ¶ 48 of this Complaint.

142.    Each such use of the U.S. mails and wires by Defendants was in furtherance of the fraudulent scheme described herein.

143.    King Hagerstown, King Volkswagen, King Kia of Silver Spring and its co-conspirators further used the wires to facilitate the operation of and to operate the fraudulent scheme described herein, and to communicate with each other during the course of the scheme through telephone calls, facsimiles, e-mail transmissions and wire transfers of money resulting from and in furtherance of the fraudulent scheme.

144.    Also as set forth herein, during all relevant times and in furtherance of and for the purpose of executing the fraudulent scheme described herein, Defendants on hundreds if not thousands of occasions transported, transmitted, and transferred in interstate or foreign commerce money of the value of $5,000 or more, knowing the same to have been obtained and/or taken by fraud, an artifice of fraud, or by means of false or fraudulent pretenses or representations in violation of 18 U.S.C. § 2314.

145.    Defendants caused the money collected by Defendants from Named Plaintiffs and the other members of the Class as payment for the prior short-term rental vehicles sold to them in violation of the disclosure requirements under Maryland law – having a value of far more than $5,000 – to be transported in interstate commerce in the course of the execution of the Defendants' fraudulent scheme.

146.    Defendants knew this money was obtained or taken by fraud, an artifice of fraud, or by means of false or fraudulent pretenses or representations. In addition, upon information and belief, Defendants divvied up their profits secured from selling prior short-term rental vehicles sold in violation of the disclosure requirements under Maryland law, and those profits – constituting far more than $5,000 – were distributed through interstate commerce.

147.    At all relevant times in connection with the activities giving rise to this action, Defendants conspired with each other and other persons and entities to engage in the activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiffs and other customers, and aided and abetted one another in these activities, all as proscribed by both Maryland and federal law.

148.    Defendants repeated their pattern of using the U.S. mails and/or telephone or wire transmissions in furtherance of their fraudulent scheme, and of transporting and causing others to

transport money and property with a value exceeding $5,000 in interstate commerce, in furtherance of their fraudulent scheme and knowing the same to have been stolen, converted or taken by fraud, in connection with hundreds if not thousands of similar transactions.

149.    Each such use of the U.S. mails and/or wires in connection with this fraudulent scheme constituted the offenses of mail and/or wire fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and/or 1343.  Each such transportation by Defendants of money or property with a value exceeding $5,000 in interstate commerce in connection with and in furtherance of the scheme and artifice to defraud, and with their knowledge of the same to have been stolen, converted or taken by fraud, constituted the offense of interstate transport of money, converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

150.    These uses of the U.S. mails and wires and the interstate transport of money converted or fraudulently obtained to further the fraudulent scheme were not limited to the transactions of Named Plaintiffs but, as stated, also occurred in the transactions of numerous other Class members, including but not limited to the transactions identified in the chart set forth in ¶ 48 herein.

151.    Each member of the Class completed a transaction in which Defendants sold a vehicle previously used as a prior short-term rental vehicle, in which the Defendants did not disclose such fact as required under Maryland law, resulting in damages to Named Plaintiffs and the Class. Defendants repeated this pattern – that is, the use of the U.S. mails and/or wires, and the interstate transport of money converted or fraudulently obtained, in furtherance of their fraudulent scheme – in numerous similar vehicle transactions, including but not limited to the transactions of Ms. Clay, Ms. Kote, Ms. Weinberger, and the purchasers of the vehicles identified in ¶ 48 of this Complaint.

152.    These acts of racketeering activity were related because: (1) they targeted the identical victims – the buyers of used vehicles; (2) they had the identical purpose of misleading buyers and misrepresenting the prior short-term rental use of vehicles to unlawfully benefit Defendants at the expense of buyers; (3) they had the identical result of inducing buyers such as Plaintiff and Class members to purchase such vehicles based on incomplete, false, and misleading representations regarding the prior use of such vehicles; and (4) they had the same, or similar, methods of commission, i.e. – misrepresenting to the buyers of used vehicles their prior commercial use through the identical, or nearly identical, misleading form documents.

153.    Defendants' use of false and misleading representations in their used vehicle transactions with Plaintiffs and Class members, as well as Defendants' use of the U.S. mails and wires to execute these transactions, was part of Defendants' regular way of conducting business.

154.    Defendants knew that the use of the mails and/or wires would follow the sale of a vehicle in the ordinary course of business.

155.    Defendants' enterprise the King Auto Group has operated continuously for more than five years to the present and has affected hundreds or thousands of customers' transactions through the systematic scheme to sell previously used prior short-term rental vehicles without the disclosure required by Maryland law.

156.    Defendants knowingly participated and engaged in the enterprise and functioned as continuing units identifiable over a period of time and were involved in the transactions of Named Plaintiffs and other members of the Class over a period spanning more than five years and involving hundreds or thousands of transactions.  The use by King Hagerstown, King Volkswagen and King Kia of Silver Spring, as well as their co-conspirators, of the U.S. mails and wires interstate, and the interstate transport of money and property with a value exceeding

$5,000 as described herein, constitute multiple instances of wire and mail fraud, multiple instances of interstate transport of money converted or fraudulently obtained, and further constitute a pattern of racketeering activity.

157.    Nevertheless, the enterprise described above did not exist solely for the purpose of engaging in predicate acts violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, but the enterprise also engaged in legitimate vehicle sales transactions over the same period of time.   Among other things, the enterprise developed forms and marketing campaigns for legitimate vehicle sales transactions and enabled the distribution of income from these legitimate vehicle sales transactions to the various Defendants, as well as to their owners and employees.

158.    Named Plaintiffs and members of the Class relied to their detriment on the legitimacy and legality of the RICO enterprise.

159.    If Named Plaintiffs and Class members then had suspected that the King Auto Group was a racketeering enterprise and was being used to facilitate the fraudulent scheme described herein, at the expense of Named Plaintiffs and Class members, they would have refused to conduct business with Defendants and their enterprise, would not have entered into transactions with the King Auto Group or Defendants, and would have sought to secure their rights under the law at that time.

160.    Plaintiff and the Class were injured in their business or property by reason of the above-described unlawful conduct by Defendants.

161.    As the purchasers of used vehicles without disclosure of the prior short-term rental use of such vehicles, Plaintiffs and the members of the Class were the foreseeable and intended victims of Defendants' above-described scheme to defraud.   It was foreseeable that if

the vehicle sales agreements of Plaintiffs and the Class members concealed, or deceptively or falsely represented, the prior use of the vehicles being sold, Plaintiffs and the Class would be harmed.  A buyer's overpayment for such a vehicle was a foreseeable and natural consequence of Defendants' scheme to defraud.

162.    As a result of Defendants' illegal scheme to sell used vehicles to Plaintiffs and the Class that: (1) were used for prior short-term rentals without disclosing such prior use as required by Maryland law, and (2) failed to comport with the description and use of the vehicle represented in the contract of sale, Plaintiffs and the Class overpaid for their vehicles, paid significantly more for their vehicles than they were worth, and were deprived of the benefits that they bargained to obtain when they contracted to purchase their vehicles.

163.    As stated herein, Defendants reached an agreement with King Hagerstown, King Volkswagen and King Kia of Silver Spring that they would sell to buyers, including Plaintiffs and the Class, used vehicles without the disclosures of prior short-term rental use required by law.

164.    Defendants were aware that it was unlawful to conceal, misrepresent and fail to clearly and conspicuously disclose the prior short-term rental use of a vehicle.

165.    Nevertheless, Defendants agreed to participate in, and participated in, the above-described fraudulent scheme to mislead and deceive buyers, and they used the U.S. mails and wires to further this scheme.

## VIII.   CAUSES OF ACTION

### COUNT ONE
### (Implied Warranty of Merchantability)

166.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

167.   Auto dealers and other professional vehicle buyers in the trade need to know prior to purchasing a vehicle at an auto auction or from any other seller whether the vehicle has been used as a short-term rental vehicle both because use for short-term rentals depresses the market value of such vehicles and because dealers and buyers in the trade know that a seller of the vehicle to a retail buyer will be legally obligated to disclose the vehicle's prior use for short-term rentals, a disclosure that depresses the vehicle's market value.

168.   To accommodate these concerns of professional vehicle buyers in the trade, auto auctions that process thousands of vehicle transactions routinely require that short-term rental vehicles be offered for sale through "lanes" dedicated solely for short-term rentals so that buyers clearly understand the prior use to which these vehicles have been placed; in addition, when a short-term rental vehicle is sold outside a lane dedicated to such vehicles, auto auctions routinely require that sellers "announce" (*i.e.*, disclose) their knowledge that the vehicle previously has been used for short-term rentals.  For a short-term rental vehicle to be acceptable within the trade, its prior use for short-term rentals must be disclosed before sale.

169.   Additionally, certain licensed automobile dealers will not accept a vehicle upon trade-in from a buyer without first obtaining from the buyer a signed statement certifying, among other things, the existence or non-existence of any former rental use of the trade-in vehicle.

170.   Such a requirement within the automobile industry establishes that accurate disclosure of prior use is needed for a vehicle to "pass without objection in the trade."  If disclosure of prior rental use did not affect the vehicle's merchantability, automobile dealers would not require buyers trading in their used vehicles to provide such information, and reserve the right to cancel the trade-in transaction or reappraise the vehicle upon the furnishing of false information.

171.    Conversely, when a licensed auto dealer in Maryland sells a vehicle previously used for short-term rentals to a prospective retail buyer, Maryland law mandates that the dealer clearly and conspicuously disclose to the prospective retail buyer before sale the vehicle's prior use for short-term rentals.

172.    Under both a buyer's reasonable expectations as well as trade quality standards, a vehicle with a prior rental history that is not clearly and conspicuously disclosed cannot pass without objection in the trade under the contract description and simply is not merchantable under Maryland law.  A significant segment of the buying public objects to purchasing a used vehicle previously used as a short-term rental vehicle.

173.    Defendants are merchants engaged in the business of selling goods such as the used vehicles sold to Named Plaintiffs and Class members.

174.    At the time of the sales to Named Plaintiffs and Class members, Defendants impliedly warranted to Named Plaintiffs and Class members that the used vehicles they purchased conformed to the descriptions and affirmations of fact made to them in their contracts of sale about their vehicle's prior use.

175.    By including on their standard vehicle sales agreements a space expressly designated for the disclosure of prior non-consumer use of a vehicle, including prior short-term rental use, Defendants warranted to Named Plaintiffs and Class members that the prior use of the vehicles comported with the representations concerning prior non-consumer use of the vehicles made by Defendants on the vehicle sales agreements.

176.    Defendants' failure to disclose the prior short-term rental use of the vehicles to Named Plaintiffs and Class members in the space provided for such disclosure on their vehicle sales agreements constituted an affirmative misrepresentation to Named Plaintiffs and Class

members that the vehicles were not used previously for such a purpose.

177.    Absent such a disclosure on their contract documents, the vehicles sold to Named Plaintiffs and the Class could not "[p]ass without objection in the trade under the contract description."

178.    In breach of the implied warranty of merchantability that arises under MD. CODE ANN., COM. LAW § 2-314(2)(a), on the date Named Plaintiffs and Class members purchased their vehicles, each vehicle would not pass without objection in the trade under the contract description.

179.    As a result, the used vehicles purchased by Named Plaintiffs and Class members failed to conform to the implied warranties made to them on their contracts of sale.

180.    The principal function of merchantability is to give legal effect to a buyer's reasonable expectations. Where, as here, Named Plaintiffs and the Class members had a reasonable and legally protected expectation of receiving goods that would pass without objection in the trade under the contract description, their reasonable expectations were not met, and Defendants breached the implied warranty of merchantability arising under MD. CODE ANN., COM. LAW § 2-314(2)(a).

181.    Upon information and belief, all of the Defendants possessed actual knowledge of the breaches of implied warranty by the other Defendants in their sales to Named Plaintiffs and the Class members of vehicles previously used for short-term rentals.

182.    As previously alleged and incorporated herein, all of the Defendants aided, abetted and encouraged the wrongful and tortious conduct of one another in the transactions of Named Plaintiffs and Class members, including their respective breaches of the implied warranty of merchantability under MD. CODE ANN., COM. LAW § 2-314(2)(a), and knowingly provided

substantial assistance, aid and encouragement to one another in the commission of such unlawful conduct.

183.    Defendants further reached an agreement or understanding to breach the implied warranty of merchantability in their transactions with Named Plaintiffs and the Class, and they worked in combination with each other and performed the overt acts described herein to facilitate and engage in a conspiracy to breach the implied warranty of merchantability in these transactions.

184.    As a result of Defendants' breach of the implied warranty of merchantability, their aiding and abetting of Defendants' above-described tortious conduct, and their conspiracy to breach the implied warranty of merchantability, Named Plaintiffs and the Class sustained the losses and damages described herein, including but not limited to the loss of the benefit of their bargains.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages plus pre-judgment interest and costs for each Class member; and request such other and further relief as may be just and as the Court deems proper for each Class member.

## COUNT TWO
### (Magnuson-Moss Warranty Act)

185.    Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

186.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "Act") in 1975 in response to widespread complaints from buyers that many warranties were misleading and deceptive, and were not being honored. To remedy this problem of deception and

failure to honor warranties, the Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." *Id.* The Act authorizes the award of attorneys' fees and expressly authorizes class actions. 15 U.S.C. § 2310(e).

187. Defendants are "warrantor[s]" within the meaning of Section 2301(5) of the Act.

188. Named Plaintiffs and other members of the Class are "consumers" within the meaning of Section 2301(3) of the Act.

189. Defendants' breach of the implied warranty of merchantability, and Defendants' conspiracy to breach the implied warranty of merchantability, set forth in Count One of this Complaint and expressly incorporated herein, violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., including 15 U.S.C. § 2310(d).

190. Defendants reached an agreement or understanding to violate the Magnuson-Moss Warranty Act in Defendants' transactions with Named Plaintiffs and the Class, and they worked in combination with each other and performed the overt acts described in this Complaint to facilitate and engage in a conspiracy to violate the Magnuson-Moss Warranty Act in these transactions. As a result of Defendants' violation of, and conspiracy to violate, the Magnuson-Moss Warranty Act, Named Plaintiffs and the Class sustained the losses and damages described herein.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages, as well as reasonable counsel fees and costs as permitted by 15 U.S.C.A. § 2310, and pre-judgment interest for each Class member; and request such

further relief as may be just and as the Court deems proper for each Class member.

**COUNT THREE**
**(Maryland Consumer Protection Act)**

191.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

192.    Defendants are each merchants within the meaning of the CPA, MD. CODE ANN., COM. LAW § 13-101(g), and are subject to all CPA provisions prohibiting unfair or deceptive trade practices, including those in MD. CODE ANN., COM. LAW §§ 13-303 and 13-301.

193.    Defendants made false and misleading representations to Named Plaintiffs and Class members in the offer to sell and sale of vehicles to the Named Plaintiffs and Class that had the capacity, tendency, or effect of deceiving or misleading consumers.

194.    Defendants falsely and misleadingly represented to Named Plaintiffs and Class members that the vehicles they purchased had a characteristic they did not have and possessed a particular standard and quality they did not possess by representing to Named Plaintiffs and the Class that the vehicles they purchased had not been used for prior short-term rentals.

195.    Defendants' affirmative misrepresentations that the vehicles of Named Plaintiffs and the Class were not used previously for short-term rentals, as well as their failure to disclose to, and concealment from, Named Plaintiffs and Class members the material fact that their vehicles previously were used for short-term rentals, constituted unfair and deceptive trade practices in violation of the CPA, MD. CODE ANN., COM. LAW §§ 13-301(1), (2)(i) and (iv) and (3), and 13-303(1) and (2).

196.    On information and belief, Defendants regularly and systematically acquire vehicles for the purpose of resale that have been used as short-term rentals, and they retail these vehicles to the public without disclosing the prior rental use to their customers.

197. Defendants conspire together to do so in violation of the CPA to illegally increase their profits for both their joint and individual benefit.

198. Defendants were involved in the transactions of Named Plaintiffs as co-conspirators and joint tortfeasors. At the time of the offer to sell and sale of used vehicles to the Named Plaintiffs, Defendants associated together under the King Auto and/or King Auto Group moniker to advertise and jointly market themselves, purchased used vehicles that previously had been used as prior short-term rental vehicles, used and agreed to use misleading form documents in the course of their sales of used vehicles, used and agreed to use the same deceptive practices to sell such vehicles, and agreed to transfer and transferred among one another prior rental vehicles that could not be sold by one member of the conspiracy within an acceptable timeframe to further their above-described fraudulent scheme to sell such vehicles without the disclosures required by Maryland law.

199. Defendants agreed to conceal from, and not to disclose to, purchasers the prior rental use of vehicles to advance each Defendant's independent personal gain and individual financial stake in its respective corporation and in the conspiracy.

200. As a result, when King Hagerstown, King Volkswagen, and King Kia of Silver Spring failed to disclose to, and concealed from, Named Plaintiffs the prior rental use of the vehicles they were purchasing, they did so as part of a conspiracy, scheme and concerted action in which all of the other Defendants participated, for the joint benefit and with the knowledge and consent of the other Defendants as co-conspirators.

201. Defendants, all associating under the King Auto Group umbrella, reached an agreement or understanding to violate the CPA in their transactions with Named Plaintiffs and the Class and worked in combination with each other and performed the overt acts described

herein to facilitate and engage in a conspiracy to violate the CPA.

202.    The failure by King Hagerstown, King Volkswagen and King Kia of Silver Spring to comply with the law governing the transactions of Named Plaintiffs and the Class members, and their conspiracy with the other Defendants to do so, was deceptive and unfair within the meaning of the CPA.

203.    Defendants' suppression and omission of material facts and affirmative misrepresentations had the capacity, tendency or effect of deceiving and misleading the Named Plaintiffs and the Class and in fact deceived and misled them, causing them to sustain the losses and damages described herein.

204.    Upon information and belief, all of the Defendants possessed actual knowledge of the violations of the CPA by the other Defendants in their sales to Named Plaintiffs and the Class members of vehicles previously used for short-term rentals.

205.    As previously alleged and incorporated herein, all of the Defendants aided, abetted and encouraged the wrongful and deceptive conduct of one another in the transactions of Named Plaintiffs and Class members, including their respective violations of the CPA, and knowingly provided substantial assistance, aid and encouragement to one another in the commission of such unlawful conduct.

206.    As a result of Defendants' unfair and deceptive trade practices described above, their aiding and abetting of the above-described conduct, and conspiracy to engage in such unfair and deceptive trade practices, Named Plaintiffs and the Class agreed to and did purchase their vehicles, paid Defendants significantly more for their vehicles than they were worth, and sustained the other damages and losses described herein.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as

a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages, as well as reasonable counsel fees and costs as permitted by MD. CODE ANN., COM. LAW § 13-408 and pre-judgment interest for each Class member; and request such further relief as may be just and as the Court deems proper for each Class member.

**COUNT FOUR**
**(Deceit By Non-Disclosure or Concealment)**

207.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

208.    On information and belief, Defendants regularly acquire vehicles for the purpose of resale that have been used as short-term rentals and regularly and intentionally retail these vehicles to the public by misrepresenting, concealing and failing to disclose this prior use to their customers in violation of Maryland law to increase their respective profits.

209.    As described above, Named Plaintiff Michelle Clay entered into a written sales agreement to purchase a 2007 Ford Focus from King Hagerstown; Named Plaintiff Agnita Kote entered into a written sales agreement to purchase a 2008 Ford Focus from King Volkswagen; and Veronica Blake Weinberger entered into a written sales agreement to purchase a 2010 Ford Focus from King Kia of Silver Spring. The Class members entered into similar written sales agreements to purchase used vehicles from Defendants.

210.    The transactions entered into by Named Plaintiffs are a small but representative sample of Defendants' systematic fraud on the public and of Defendants' conspiracy to commit fraud.

211.    Defendants King Hagerstown, King Volkswagen and King Kia of Silver Spring, as well as the other Defendants, have a duty to disclose the prior use of vehicles employed as short-term rentals, but they intentionally and systematically failed to disclose and concealed from

51

Named Plaintiffs and other members of the Class this fact, which they had a duty to disclose.

212.    Indeed, due to the requirements of Maryland law that any short-term rental history be disclosed clearly and conspicuously, Defendants' failure to make such a disclosure on a form that contained a pre-printed space for such disclosure constituted an affirmative misrepresentation of the vehicle's history by the Defendants who sold these vehicles to Named Plaintiffs and Class members at the time of the consummation of each transaction.

213.    Defendants acted with intent to mislead and deceive Named Plaintiffs and the Class members.

214.    Through their affirmative material misrepresentations and concealments, Defendants intended to induce Named Plaintiffs and the Class to act differently than they would have acted had they known the true facts; Defendants intended to induce them to purchase a less desirable and less valuable vehicle that previously was used for rentals instead of a used vehicle without a history of short-term rental use, and to pay more for this vehicle than it was worth.

215.    Named Plaintiffs and Class members acted in justifiable reliance on Defendants' concealments, failures to disclose and affirmative misrepresentations concerning the prior rental use of the used vehicles they purchased when they consummated their transactions based on the false and misleading representations by Defendants concerning the prior use of the vehicles they purchased.

216.    Defendants reached an agreement or understanding to conceal from, and fail to disclose to, Named Plaintiffs and the Class material facts concerning the prior short-term rental use of the vehicles sold to Named Plaintiffs and the Class and to engage in the scheme and artifice described herein to defraud Named Plaintiffs and the Class. Defendants participated in this fraudulent scheme and worked in combination with each other, performing the overt acts

described herein, to facilitate and engage in a conspiracy to deceive and defraud Named Plaintiffs and the Class.

217.    Upon information and belief, all of the Defendants possessed actual knowledge of the other Defendants' non-disclosure, concealment and misrepresentation of the rental history of the vehicles they sold to Named Plaintiffs and Class members.

218.    As previously alleged and incorporated herein, all of the Defendants aided, abetted and encouraged the wrongful and tortious conduct of one another in the transactions of Named Plaintiffs and Class members, including the non-disclosure, concealments and misrepresentations of the prior use of the vehicles sold to Named Plaintiffs and Class members, and knowingly provided substantial assistance, aid and encouragement to one another in the commission of such unlawful conduct.

219.    As a result of Defendants' affirmative misrepresentations concerning and concealment of the aforesaid material facts, their aiding and abetting of one another in the commission of the above-described unlawful conduct, as well as Defendants' conspiracy to engage in this conduct, Named Plaintiffs and the Class sustained the losses and damages described herein, including but not limited to paying significantly more for their vehicles than these vehicles were worth.

220.    Defendants' above-described sales of used vehicles to Named Plaintiffs and the Class, aiding and abetting of one another in the commission of such unlawful conduct, and conspiracy to sell vehicles without disclosing their prior use as short-term rentals, constituted egregious misconduct and was motivated by Defendants' actual malice toward Named Plaintiffs and the Class.

221.    Defendants intended to and did injure Named Plaintiffs and the Class by

deceiving them into purchasing their vehicles and into paying significantly more for their vehicles than they would have paid had Defendants complied with Maryland law by clearly and conspicuously disclosing the vehicles' prior use as short-term rentals.

222.    Until significant punitive damages are awarded against Defendants, Defendants will continue to violate Maryland's disclosure laws as part of their ongoing scheme to obtain profits illegally at the retail public's expense.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages, as well as punitive damages in such amount necessary to punish and deter Defendants, and pre-judgment interest and costs for each Class member; and request such further relief as may be just and as the Court deems proper for each Class member.

## COUNT FIVE
### (Money Had and Received/Unjust Enrichment)

223.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

224.    As described above, Defendants deceptively assessed and collected payments for vehicles that had been used as short-term rentals in amounts that exceeded the represented value of these vehicles, which conferred a substantial benefit on each of Defendants.

225.    By doing so, Defendants have come into the possession of money that they had, and have, no right to at law or in equity.

226.    Defendants reached an agreement or understanding to assess and collect payments for vehicles that had been used as short-term rentals in amounts that exceeded the value, and represented value, of those vehicles, and they worked in combination with each other and performed the overt acts described herein to facilitate and engage in a conspiracy to do so.

227.    Defendants obtained possession of money belonging to Named Plaintiffs and Class members by concealing from, failing to disclose and/or misrepresenting to Named Plaintiffs and Class members the description, condition and prior use of the vehicles they were purchasing.

228.    Because Defendants misrepresented and concealed the prior rental use of the vehicles that Named Plaintiffs and the Class members purchased, Named Plaintiffs and the Class purchased such vehicles without material information concerning the prior use of such vehicles and based on a mistake of fact concerning the history of these vehicles.

229.    In furtherance of the above-described conspiracy, Defendants both individually and in concert with one another committed the overt acts or omissions alleged herein to the economic loss and injury of Named Plaintiffs and members of the Class.

230.    Defendants conspired with one another by common agreement or understanding for the unlawful purposes of: (a) depriving Named Plaintiffs and Class members of their rights under the statutory provisions and common law; and (b) depriving Plaintiffs and Class members of their money and property.

231.    Defendants, acting with each other, did unlawfully deprive Named Plaintiffs and Class members of both their money and property and the rights alleged herein, for the purpose of advancing their conspiracy.

232.    Defendants were aware, and had knowledge, of the substantial benefits conferred by Named Plaintiffs and other members of the Class on Defendants by their payment of amounts that exceeded the value of the vehicles purchased as a result of Defendants' failure to disclose the rental history of such vehicles to Named Plaintiffs and the Class.

233.    As previously alleged and incorporated herein, all of the Defendants aided,

abetted and encouraged the wrongful conduct of one another in the transactions of Named Plaintiffs and Class members.

234.    As a result of Defendants' above-described misrepresentations, failures to disclose and concealments, tortious aiding and abetting of one another in the commission of the above-described unlawful conduct, as well as Defendants' conspiracy to unjustly enrich themselves at the expense of Named Plaintiffs and the Class, Defendants have come into the possession of money in the form of payments to which they had, and have, no right at law or in equity, and they have been unjustly enriched at the expense of Named Plaintiffs and the Class.

235.    Under these circumstances, it would be inequitable for Defendants to retain any such monies that they had no legal right to charge or collect.

236.    As a consequence, Named Plaintiffs and other members of the Class have sustained the losses and damages described herein, and Defendants should be required to make restitution to them.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for damages sustained, including restitution, pre-judgment interest and costs for each Class member; request equitable, declaratory, and/or injunctive relief prohibiting Defendants from selling prior short-term rental vehicles without proper disclosure to consumers; and request such other and further relief as may be just and as the Court deems proper for each Class member.

## COUNT SIX
### (Negligent Misrepresentation)

237.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below, except to the extent they allege intentional and

malicious conduct by Defendants. In this Count, Plaintiffs plead in the alternative as permitted by Maryland law.

238.    Defendants owed a duty to exercise care in the disclosures they provided to Named Plaintiffs and the Class in connection with the sale, and offer for sale, of vehicles to them.  Defendants owed a duty to ensure that their written disclosures to Named Plaintiffs and the Class were accurate and non-misleading and complied with Maryland law governing the sale of used vehicles. In particular, Defendants owed a duty, prior to sale, to clearly and conspicuously disclose to Named Plaintiffs and the Class any previous short-term rental use of the vehicles sold to Named Plaintiffs and the Class.

239.    However, Defendants negligently omitted and failed to disclose the material fact that the vehicles sold to Named Plaintiffs and the Class previously had been used as short-term rental vehicles, negligently misrepresented that the vehicles sold to them previously were used for consumer purposes only, negligently misrepresented the condition, quality and standard of the vehicles, negligently failed to disclose that the price of the vehicles did not accurately reflect their value, and failed to disclose that the vehicles would not pass without objection in the trade under the contract description.

240.    Defendants breached the duty of care they owed to Named Plaintiffs and the Class by making the above-described false, misleading and negligent representations and by negligently omitting material facts, as described above.

241.    At the time Defendants made the above-described false statements and omissions of material fact, they intended for Named Plaintiffs and Class members to act or rely on these statements and/or omissions of material fact.

242.    Defendants knew, or had reason to know, that Named Plaintiffs and the Class

would reasonably rely on the above-described negligent representations and concealments of material fact which, if erroneous, would cause loss, injury or damage to Named Plaintiffs and the Class.

243. Named Plaintiffs and the Class justifiably and reasonably acted to their detriment in reliance on Defendants' false and misleading representations and omissions. Named Plaintiffs and Class members were induced to enter into sales agreements for vehicles that were of a lesser quality and value than represented by Defendants and paid significantly more for their vehicles than these vehicles were worth, in reliance on Defendants' negligent representations and concealments.

244. Upon information and belief, all of the Defendants possessed actual knowledge of the other Defendants' non-disclosure, concealment and misrepresentation of the former use as short-term rentals of the vehicles that they sold to Named Plaintiffs and Class members.

245. As previously alleged and incorporated herein, all of the Defendants aided, abetted and encouraged the wrongful and tortious conduct of one another in the transactions of Named Plaintiffs and Class members, including the non-disclosure, concealments and misrepresentations of the rental history of the vehicles sold to Named Plaintiffs and Class members, and knowingly provided substantial assistance, aid and encouragement to one another in the commission of such unlawful conduct.

246. Each of the Defendants knowingly perpetrated, participated in and individually benefited from the conspiracy to sell vehicles previously used for short-term rentals without disclosure of this material fact to Named Plaintiffs and the Class.

247. As described herein, Defendants reached an agreement and/or understanding concerning the written disclosures to be made to Named Plaintiffs and the Class in connection

with their vehicle purchases and failed to make the written disclosures required by Maryland law in furtherance of their conspiracy for their own personal gain, advantage and profit, resulting in legal damage to Named Plaintiffs and Class.

248.    As a direct and proximate result of Defendants' negligent statements, representations, and omissions of material fact, tortious aiding and abetting of one another in the commission of the above-described conduct, as well as Defendants' conspiracy concerning these representations, Named Plaintiffs and Class members were induced, *ab initio*, to enter into sales agreements for vehicles with Defendants, paid significantly more for their vehicles than these vehicles were worth, and otherwise were harmed.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages, as well as pre-judgment interest and costs for each Class member; and request such further relief as may be just and as the Court deems proper for each Class member.

## COUNT SEVEN
### (Breach of Contract)

249.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

250.    On or about August 11, 2010, Named Plaintiff Michelle Clay entered into a written sales agreement to purchase a used 2007 Ford Focus from Defendant King Hagerstown. On or about August 18, 2012, Named Plaintiff Agnita Kote entered into a written sales agreement to purchase a used 2008 Ford Focus from Defendant King Volkswagen; and on or about May 14, 2011, Veronica Blake Weinberger entered into a written sales agreement to purchase a used 2010 Ford Focus from King Kia of Silver Spring.  The Class members entered

into similar written sales agreements to purchase used vehicles from Defendants.

251.    The written sales agreements of Named Plaintiffs and the Class members set forth all of the terms of the contracts with the Defendants from whom they purchased their used vehicles.

252.    Prior use of a vehicle is material to a person considering purchase of a vehicle. Prior use of a vehicle is material as a matter of law, but it also is material because Defendants purported to expressly represent to Named Plaintiffs and Class members the prior use of the vehicles Defendants sold to them in the space specifically designated for such disclosure on the face of their vehicle sales agreements.

253.    Pursuant to the terms of their written contracts with Named Plaintiffs and Class members, King Hagerstown, King Volkswagen and King Kia of Silver Spring, as well as the other Defendants, promised to sell to Named Plaintiffs and the Class vehicles that comported with the descriptions of the vehicles set forth in the written sales agreements.  Defendants further promised to sell to Named Plaintiffs and Class members vehicles that were in the condition represented in the sales agreements, that were not used previously in any manner inconsistent with the written disclosures made to Named Plaintiffs and the Class in the written sales agreements, and that were not used previously as prior short-term rentals unless such former use was clearly and conspicuously disclosed as required by Maryland law.

254.    The written sales agreements between Defendants and the Named Plaintiffs and Class members contained an implied covenant of good faith and fair dealing, obligating Defendants to exercise good faith in performing their contractual obligations and to deal honestly and fairly with the Named Plaintiffs and the Class.

255.    Defendants materially breached their contracts with Named Plaintiffs and the

Class by: (a) failing to sell them the vehicles promised; (b) selling Named Plaintiffs and the Class used vehicles that failed to comport with the descriptions of the vehicles set forth in the written sales agreements; (c) selling Named Plaintiffs and the Class used vehicles previously used in a manner inconsistent with the written disclosures made to them in connection with their purchases; (d) failing to sell to Named Plaintiffs and the Class vehicles in the condition and of the quality and standard represented in their sales agreements; (e) selling Named Plaintiffs and the Class members vehicles previously used as short-term rentals without clearly and conspicuously disclosing such prior use before purchase; (f) denying Named Plaintiffs and Class members the opportunity to decline to purchase vehicles known previously to have been used as short-term rentals; and by (g) acting dishonestly and in bad faith in their dealings with Named Plaintiffs and Class members.

256.    As described herein, Defendants reached an agreement and/or understanding concerning the written disclosures to be made to Named Plaintiffs and the Class in connection with their vehicle purchases.  Upon information and belief, Defendants failed to make the written disclosures required by their written sales agreements and by Maryland law in furtherance of their conspiracy, for their own individual and collective gain, advantage and profit, resulting in damage to the Named Plaintiffs and Class members.

257.    In furtherance of their conspiracy, Defendants also agreed to develop and use form documents to offer for sale and sell to buyers prior short-term rental vehicles, which contained misleading and fraudulent material omissions and misrepresentations concerning the rental history of the vehicles sold to Named Plaintiffs and the Class, in violation of Maryland law.

258.    As a result of Defendants' above-described material breaches of contract and

conspiracy to breach the contracts of Named Plaintiffs and Class members, Named Plaintiffs and Class members have incurred damages, including but not limited to the loss of the benefit of their bargains with Defendants.

259.    Named Plaintiffs and Class members bargained to purchase, and agreed to pay for, vehicles previously used only as represented, and of the condition, quality and standard set forth in their written vehicle sales agreements.

260.    However, as a result of Defendants' above-described material breaches of contract, and Defendants' conspiracy to breach these contracts, Named Plaintiffs and Class members acquired vehicles previously used as short-term rentals and, in doing so, acquired vehicles worth less than they bargained to acquire, paid more for these vehicles than they were worth, and otherwise were harmed.

WHEREFORE, Named Plaintiffs and the Class pray for an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23; demand judgment against Defendants, jointly and severally, for compensatory damages, as well as pre-judgment interest and costs for each Class member; and request such further relief as may be just and as the Court deems proper for each Class member.

## COUNT EIGHT
### (Violation of RICO – 18 U.S.C. § 1962(a))

261.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

262.    Named Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

263.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(a).

264.    Defendants formed an association-in-fact with each other – King Auto Group  – an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in, and the activities of which affect, interstate commerce.

265.    Each of the Defendants used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

266.    These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the mail and wire fraud described in Part VII. above, and included use of the mails and wires to transmit documents and transfer funds in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

267.    These unlawful activities also included multiple instances of interstate transport of money converted or fraudulently obtained, including but not limited to the interstate transport of money converted or fraudulently obtained described in Part VII. above, which occurred uniformly and consistently during the existence of the enterprise and permitted Defendants to maintain and operate this enterprise.

268.    One of the purposes of the enterprise created by Defendants was to pool resources and expertise to acquire, advertise and sell motor vehicles used for short-term rentals, allowing Defendants to establish a methodology and scheme for selling prior short-term rental vehicles without the disclosures required by Maryland law in a uniform way, using form documents developed for use by King Auto Group's association-in-fact enterprise, and to illegally profit from this scheme at the expense of Named Plaintiffs and the Class.

269.    This association-in-fact had a common or shared purpose – that is, to give effect

to the prior short-term rental sale scheme described herein and to allow Defendants to use form documents and process to conduct their vehicle sales transactions, and it had a distinct division of labor.

270.    This association-in-fact has continued as a unit, with a core membership, over a substantial period of time, exceeding five years, and is an ongoing organization established for an economic motive. Although the membership in the enterprise has changed, and some of the Defendants were added into the enterprise over time, the structure of the organization and the functions undertaken by its members have remained constant. The association-in-fact remained viable and active at the time this action was filed.

271.    Defendants each played a substantial and distinct role in the scheme.

272.    In this association-in-fact, each Defendant car dealership agreed to promote and advertise itself as one of an affiliated group of companies operating under the banner "King Auto" or "King Auto Group."   Upon information and belief, Defendants agreed that they would subject themselves to oversight by a group of persons responsible for the management of King Auto Group.

273.    Upon information and belief, Defendants agreed that their sales practices and marketing campaigns would be governed by general guidelines developed through their King Auto Group association.

274.    However, King Auto Group is not an entity with a legal existence.

275.    Defendants created and disseminated for use, and agreed to use and used in their operations, form documents and procedures to sell used vehicles, including but not limited to purchase order forms and Prior Use Acknowledgement Forms, which did not comport with Maryland law and which were used to mislead buyers about the prior history of their vehicles.

276.    Defendants further agreed to use and used deceptive procedures for selling prior rental vehicles without the disclosure required by Maryland law, even when using form documents that contained areas specifically designated for the disclosure of the prior non-consumer use of the vehicle being sold.

277.    Named Plaintiffs and each member of the Class received form documents that contained fraudulent and false statements and/or omissions and that concealed material facts, which caused Named Plaintiffs and members of the Class to act in reasonable reliance on these deceptive documents and to believe that: (i) King Auto Group was a legitimate enterprise and was proceeding legitimately, and (ii) the vehicles sold to them had no prior short-term rental use.

278.    All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named Plaintiffs and each Class member.  Defendants' illegal activities persisted over an extended period of time.

279.    Each document provided to Named Plaintiffs and the other members of the Class in the course of their vehicle sales transactions was provided in furtherance of the conspiracy described herein, for which Defendants are liable.

280.    The reliance of Named Plaintiffs and members of the Class on the material omissions and falsehoods contained in such documents and other communications was reasonable and justified because such documents and communications would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of the operations of King Auto Group.

281.    The activities of the Defendants as described herein and in Part VII. entailed multiple instances of mail fraud, consisting of intentional mail fraud intended to induce, and inducing, Named Plaintiffs and the Class to part with property and/or to surrender legal rights in

violation of 18 U.S.C. § 1341.

282.    These activities of the Defendants also entailed multiple instances of wire fraud,

consisting of intentional wire fraud intended to induce, and inducing, Named Plaintiffs and the

Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1343.

283.    These activities of the Defendants also entailed multiple instances of interstate

transport of money converted or fraudulently obtained, in violation of 18 U.S.C. § 2314.

284.    Through the use of this illegal and fraudulent scheme, and through their efforts to

operate and maintain the enterprise described herein and to facilitate the sale of prior short-term

rental vehicles without the disclosures required by Maryland law, Defendants have been able to

retain money that is rightfully payable to Named Plaintiffs and Class members, and to collect

money not properly due from Named Plaintiffs and Class members.

285.    Defendants have retained these illegally gained funds and reinvested and used

those funds in their operations in violation of 18 U.S.C. § 1962(a).

286.    Furthermore, Defendants each previously acquired illicit funds through similar

fraudulent operations involving mail and wire fraud and interstate transport of money converted

or fraudulently obtained, and they used these proceeds to continue their scheme by investing in

and operating King Auto Group.

287.    Through Defendants' use of the illegal and fraudulent scheme of selling prior

short-term rental vehicles without the disclosures required by Maryland law, and through their

efforts to operate and maintain the enterprise described herein to facilitate the sale of prior short-

term rental vehicles without the disclosures required by law, Defendants have been able both to

maintain the enterprise and to profit from it at the expense of Named Plaintiffs and the Class.

288.    Named Plaintiffs and Class members have been injured in their property by

reason of the violations of § 1962(a), *inter alia*, because Named Plaintiffs and Class members were overcharged for their purchases from Defendants as a result of the reinvestment and use of funds by Defendants derived from Defendants' pattern of racketeering activity to fund and operate King Auto Group and facilitate and incentivize the Defendants' actions in deceptively selling prior rental vehicles without the disclosures required by Maryland law.

WHEREFORE, Named Plaintiffs and the Class pray that the Court (a) find Defendants jointly and severally liable for violation of 18 U.S.C. § 1962(a) and award Named Plaintiffs and Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that King Auto Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; and (f) award such other and further relief as the Court deems just and proper.

## COUNT NINE
### (Violation of RICO – 18 U.S.C. § 1962(c))

289.    Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

290.    Named Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

291.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(c).

292.    At all times relevant to this Complaint, the "enterprise" described herein, which is a non-incorporated association, operated separately and distinct from the Defendants that committed the violations alleged.  As previously stated, each of the Defendants is a separately incorporated entity, has its own business location and employees (other than an overlap in management), and has an individual profit motive and personal financial stake in the conspiracy. Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

293.    Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each other and by participating and assisting in the fraudulent scheme described herein to acquire and sell prior short-term rental vehicles without the disclosures required by Maryland law.

294.    Defendants participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful racketeering activity under 18 U.S.C. § 1961(1)(B), 1961(5) and 1962(c), including:

(a) Multiple acts of mail fraud in violation of 18 U.S.C. § 1341;

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c) Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

295.    Each Class member suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the Defendants' violations of 18 U.S.C. § 1962(c).

WHEREFORE, Named Plaintiffs and the Class pray that the Court (a) find Defendants jointly and severally liable for violation of 18 U.S.C. § 1962(c) and award Named Plaintiffs and

Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that King Auto Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and restrain Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; and (f) award such other and further relief as the Court deems just and proper.

## COUNT TEN
### (Violation of RICO – 18 U.S.C. § 1962(d))

296.     Plaintiffs re-allege and incorporate herein by reference the allegations in the foregoing paragraphs as if fully set forth below.

297.     Named Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

298.     Each Defendant and co-conspirator are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(d).

299.     Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

300.     Defendants as co-conspirators were associated with the enterprise described herein and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

301.     Defendants each knew of the RICO violations of the enterprise described in this Complaint and agreed to facilitate and participate in those activities; Defendants further were

aware of the objectives of the conspiracy described herein and each participated in this conspiracy.

302.    Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish, and operate the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, as well as multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

303.    Defendants as co-conspirators conspired to operate, maintain control of, participate and maintain an interest in the enterprise and have done so through a pattern of unlawful activity, including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

304.    Named Plaintiffs and each Class member have suffered injury to their property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of the overt acts described herein, constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Named Plaintiffs and the Class pray that the Court (a) find Defendants jointly and severally liable for violation of 18 U.S.C. § 1962(d) and award Named Plaintiffs and Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that King Auto Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and

restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; and (f) award such other and further relief as the Court deems just and proper.

## JURY TRIAL

Plaintiffs demand trial by jury.

Respectfully submitted,

Richard S. Gordon  (Bar No. 06882)
Stacie F. Dubnow  (Bar No. 10246)
GORDON, WOLF & CARNEY, CHTD.
102 West Pennsylvania Avenue, Suite 402
Baltimore, Maryland 21204
Telephone:  (410) 825-2300
Fax:  (410) 825-0066

Mark H. Steinbach (Bar No. 26538)
Of Counsel
O'TOOLE ROTHWELL
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

Attorneys for Plaintiffs and the Class

By:   /s/
       Richard S. Gordon