IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| **MICHELLE ANN CLAY,** *et al.* | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 1:14-cv-00811-DKC |
| | * | |
| **KING HAGERSTOWN MOTORS,** | * | |
| **LLC,** *et al.* | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS AND COMPEL
ARBITRATION OF AGNITA KOTE'S CLAIMS**

## I. INTRODUCTION

This lawsuit arises out of Plaintiff Agnita Kote's ("**Kote**") purchase of a used 2008 Ford Focus ("**Vehicle**") from Defendant King Volkswagen LLC ("**King VW**") pursuant to a contract dated August 18, 2012. ECF No. 1, Ex. B. [1] Kote alleges, *inter alia*, that the Defendants failed to disclose that the used Vehicle she purchased had previously been a short term rental vehicle. ECF No. 1.

Defendants respectfully submit that Kote's claims are without merit. Moreover, for some unexplainable reason, Kote attaches the signed Buyer's Order to her Complaint, but ignores altogether the fact it contains a binding "**Agreement to Submit All Disputes to Arbitration**" where she contractually agreed to submit her claims to arbitration. Therefore, this Court has no jurisdiction over this matter pursuant to 9 U.S.C. §2 et seq. ("**FAA**") and *Md.Code.Ann.Cts.& Jud. Proc.* §3-206(a) ("**MAA**").

---

[1]     See Buyer's Order dated August 18, 2012 attached hereto as Ex. 1.

## II. **RELEVANT FACTUAL BACKGROUND**

1. On August 18, 2012, Kote came to King VW in Gaithersburg, Maryland, selected a vehicle, negotiated a price of $10,841 and then executed a contract to purchase a used 2008 Ford Focus with 55,028 miles on it (the "**Buyer's Order**"). See ECF No. 1, ¶¶20, 84 and 250.

2. The Buyer's Order, signed by both parties, contains a detailed and binding arbitration agreement which states as follows:

> "1. **Agreement to Submit All Disputes to Binding Arbitration**:
>
> **Submission to Arbitration: The undersigned Purchaser(s) ("Purchaser") expressly agrees that all claims or disputes which Purchaser may have arising out of, in connection with or any way to relating to the Buyer's Order, the sale, service, financing, or lease of the Vehicle being purchased, any trade-in vehicle or any documents or agreements of any kind relating thereto with the Dealer, shall be resolved exclusively through final and binding arbitration.** This arbitration agreement is intended to have the broadest application and includes but is not limited to any tort, contract, common law, constitutional or other statutory claims arising out of any federal, state of local laws and any dispute concerning the arbitrability of any such claims." (emphasis in original).

(the "**Arbitration Agreement**") [2]

3. The Arbitration Agreement contains a non-binding mechanism for "informal dispute settlement procedures" in advance of binding arbitration which states as follows:

> "**Pre-Arbitration Efforts to Resolve Disputes:** Before any dispute may be submitted to arbitration under this agreement, Purchaser <u>must give written notice to Dealer within 180 days of the date on which the Purchaser first knew, or should have known, of the facts that have arisen to the basis for the dispute</u>, setting forth, in detail the factual basis of the claim, with copies of all documents supporting the claim, and a detailed statement of the relief sought, **otherwise, the claim shall be void and deemed waived.** The parties will then make a good faith effort to resolve any dispute covered by this Agreement on an informal basis (emphasis in original).

4. The Arbitration Agreement contains the detailed terms, rights, remedies and procedures for the agreed upon arbitration in accordance with the Supreme Court's

---

[2]     See Buyer's Order ¶1 attached hereto as Ex. 1.

pronouncement in *AT & T Mobility LLC v. Conception*, 131 S.Ct 1740 (2011) as follows:

"**Binding Arbitration**. If a covered claim or dispute is not resolved as provided above, Purchaser must give written notice to Dealer, by certified mail addressed to the Dealer at the address stated on the front of this Buyer's Order setting forth, in detail the factual basis of the claim, with copies of all documents supporting the claim, and a detailed statement of the relief sought, ["Claim Submission"]. This will constitute written submission of the dispute to Dealer. The Claim Submission will then be submitted to the Arbitrator once he/she is selected. Purchaser agrees to submit all of its claims and disputes for resolution by final binding arbitration before a single arbitrator to be mutually agreed upon by the Purchaser and Dealer. The parties agree to select a single arbitrator within thirty (30) days after receipt of the Claim Submission. If they are unable to mutually agree on the selection of an arbitrator within this time period, then each party shall select an independent attorney licensed to practice law in the State of Maryland with at least 10 years of commercial litigation experience, other than their own counsel ["Appointee(s)"]. Within 15 days after each Appointee has been selected, the two Appointees shall meet and mutually agree upon the selection of a single arbitrator who must be an attorney, including but not limited to, a retired judge, licensed to practice law in the State of Maryland with at least 10 years of commercial litigation experience and recognized as ethical and reputable within their field. If the two Appointees cannot agree upon a single arbitrator, then the selection of a single arbitrator shall be made in accordance with the Maryland Arbitration Act. Each party shall pay the fees and costs of the Appointee selected by that party. If a party shall fail to appoint its Appointee within the period specified above, the Appointee selected by the other party shall be the sole person to select the arbitrator, this arbitration agreement shall be governed by, construed, administered and enforced in accordance with the laws of the State of Maryland and the Maryland Arbitration Act; provided however, the arbitrator shall also allow for, and shall have the express authority to allow for, appropriate discovery and exchange of information before a hearing. Any hearing shall take place in Prince George's County, Maryland. Any petition pursuant to Md.Cts&Jud.Proc.Art. § 3-203 shall be filed in the Circuit Court for Prince George's County, Maryland. Judgment of the award rendered by the arbitrator shall be final and shall be entered in any court having jurisdiction. Dealer agrees that it will not seek reimbursement of its attorney's fees, unless it is frivolous or brought without substantial justification. Dealer agrees to pay all fees and costs of arbitration, unless it is frivolous or brought without substantial justification. For claims of $10,000 or less only, Purchaser may choose to appear in person, by telephone or only on written submissions. For claims of $10,000 or less only, excluding attorney's fees, if the Purchaser obtains an arbitration award, excluding attorney's fees, which is greater than the Dealer's last settlement offer by at least 10%, then Dealer will pay Purchaser the arbitration award, plus 100% of the difference between Dealer's last settlement offer and the amount of the arbitration award, excluding attorney's fees.

3

5. The Arbitration Agreement also contains a binding waiver of jury trial further evidencing Kote's agreement to submit her claims to binding arbitration as follows:

"**Waiver of Jury Trial**. If any provision of this arbitration agreement or the application thereof to any party or any circumstances shall, for any reason and to any extent, be invalid or unenforceable so that the matter is not submitted to binding arbitration as contemplated herein, Purchaser nevertheless **knowingly, willingly and voluntarily does expressly hereby waive a trial by jury on all issues, claims, counterclaims, and cross-claims of any kind or nature** arising out of, in connection with or relating in any way to, the Buyer's Order, the sale, service, financing, or lease of the Vehicle being purchased, any trade-in vehicle, or any documents or agreements of any kind relating thereto with the Dealer" (emphasis in original).

6. In the Arbitration Agreement, Kote expressly acknowledged and agreed that the Defendants "may use this arbitration agreement in support of its request to the Court to dismiss the lawsuit and require (Kote) to proceed with binding arbitration" as follows:

"**Use of this Agreement**. Purchaser understands that if he/she does file a lawsuit regarding a dispute arising out of, in connection with or relating in any way to the Buyer's Order, the sale, service, financing, or lease of the Vehicle being purchased, any trade-in vehicle, or any documents or agreements of any kind relating thereto with the Dealer. Dealer may use this arbitration agreement in support of its request to the Court to either dismiss the lawsuit and require Purchaser to proceed with binding arbitration in accordance herewith or strike any demand for a jury trial, as the case may be. "

7. Kote expressly acknowledged, in writing and **in bold**, that she "read and understand(s) each of the terms and conditions" and "expressly agrees to all of them", as follows:

"**By our signatures, I/We confirm that I/We have read and understand each of the terms and conditions set forth above and on the reverse side of this Buyer's Order and expressly agree to all of them.**" (emphasis in original).

8. Despite the express terms of the Arbitration Agreement, Kote did not submit her claim to binding arbitration as agreed, or comply with the non-binding mechanisms for "informal dispute settlement procedures" in advance of binding arbitration. Instead, on March 18, 2014,

Kote improperly filed this lawsuit in this Court. ECF No. 1. [3]

9. Kote also improperly joined her claims in this Complaint, with two other unrelated plaintiffs, who did not purchase any vehicle from King VW and whose Buyer's Orders do not contain an Arbitration Agreement.

10. Defendants respectfully submits that Kote is attempting to circumvent the Arbitration Agreement in violation of 9 U.S.C. § 2 *et seq* ("*FAA*") and Md.Code.Ann.Cts.& Jud. Proc. § 3-206(a) ("*MAA*") and therefore, her case must be dismissed.

## III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays,* 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *see also Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

Although no Federal Rule of Civil Procedure expressly addresses motions to dismiss or stay pending arbitration, the United States Supreme Court has described arbitration clauses as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 (1974). A motion to dismiss based on a forum-selection clause is often treated as a motion to dismiss under Federal Rule of Civil Procedure. *Sucampo Pharmaceuticals, Inc. v. Astellas*

---

[3]     The Complaint alleges in ten counts: (i) breach of implied warranty of merchantability; (ii) breach of the MMWA (15 USC § 2301 *et seq.*); (iii) violation of Maryland's Consumer Protection Act ("MCPA"); (iv) common law fraud; (v) unjust enrichment; (vi) negligent misrepresentation; (vii) breach of contract; (viii)-(x) civil RICO claims under 18 USC §1962(a)(c) and (d). ECF No.1

*Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir. 2006).  The Fourth Circuit has since cited *Sucampo* with approval in considering a motion to dismiss based on an arbitration provision.  *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 365–66 & n. 9 (4th Cir. 2012).  *See also Styles v. Triple Crown Publications, LLC.,* Civil No. WDQ–11–3759, 2013 WL 3944471 *3 (D. Md., July 30, 2013) citing *Jones v. Koons Auto., Inc.,* 752 F.Supp.2d 670, 679–80 (D. Md.2010).

## IV. ARGUMENT

### A.  Federal Arbitration Act and Maryland Uniform Arbitration Act

The Arbitration Agreement states that "it shall be governed by, construed, administered and enforced in accordance with the laws of the State of Maryland and the Maryland Arbitration Act ("MAA"). *See* Arbitration Agreement ¶1.  Maryland law is well-established that a provision in a written contract to submit to arbitration any controversy arising between the parties in the future **"is valid and enforceable and is irrevocable."** Md.Code Ann. Cts. & Jud. Proc.Art. §3-206(a) (emphasis added); *Crown Oil & Wax Co. of Delaware, Inc. v. Glen Constr. Co. of Virginia, Inc.,* 320 Md. 546, 558 (1990); *Questar Homes of Avalon, LLC v. Pillar Constr., Inc.,* 388 Md. 675, 684 (2005) (The MAA "expresses the legislative policy favoring enforcement of agreements to arbitrate").

The MAA "was purposefully meant to mirror the language of the FAA". *Walther v. Sovereign Bank,* 386 Md. 412, 423-424 (2005). The MAA has been called the "State analogue ... to the Federal Arbitration Act." *Holmes v. Coverall North America,* 336 Md. 534 (1994).  In nearly identical language to that found in the MAA, the FAA also expressly states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. *Am. Express Co. v. Italian Colors*

6

*Best.,* ——— U.S. ———, ———, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013). [4]

The same legislative policy favoring enforcement of agreements to arbitrate is present in both the MAA and FAA. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006) ('"*Section 2* embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"); *Am. Gen. Life & Acc. Ins. Co. v. Wood,* 429 F.3d 83, 87 (4th Cir. 2005). As a result, Maryland state courts rely on decisions interpreting the FAA in reaching its decisions. *Walther,* 386 Md. at 424.

Under both the FAA and MAA, a party to an arbitration agreement may bring a motion in court to compel arbitration and dismiss the proceeding. 9 U.S.C. §§3–4 and Md.CodeAnn.Cts.&Jud.Proc. §3-207. Once a motion to compel arbitration is filed, the function of the court is a "limited review" to answer two questions: (1) whether a valid agreement to arbitrate exists; and (2) whether the claim falls within the scope of that agreement. *Grant-Fletcher v. Collecto, Inc.,* Civil Action No. RDB–13–3505, 2014 WL 1877410 (D.Md.,May 9, 2014) citing *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir.1991); *Muriithi v. Shuttle Express Inc.,* 712 F.3d 173, 179 (4th Cir. 2013); *Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir.1997); *See Nowak v. NAHB Research Center, Inc.* 157 Md.App. 24, 33 (2004) citing *Holmes,* 336 Md. at 540.

If the claims are within the contemplation of the arbitration agreement, then "dismissal" is the "proper remedy". *Meena Enterpirses Inc., v. Mail Boxes Etc.,* Civil Action No: DKC 12-

---

[4] The FAA applies to contracts "evidencing a transaction involving commerce". See *Section 1.* Kote's Complaint alleges the transaction involves interstate commerce. ECF No. 1, ¶264, 283, 294 and 302. Therefore, the FAA governs the arbitration agreement in question. *Rota-McLarty v. Santander Consumer USA, Inc.* 700 F.3d 690, 698 (4th Cir. 2012) (In deciding to apply the FAA, we need not identify any specific effect upon interstate commerce, so long as "in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.") citing *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56–57, (2003); *Branchville Machinery Co., Inc. v. Agco Corp.,* 252 F.Supp.2d 307, 309 (E.D.Va.,2003).

1360, 2012 WL 4863695 *3 (D. Md.  Oct. 11, 2012) citing *Choice Hotel Int'l v. BSR Tropicana Resort Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Seney v. Rent- A Center Inc.*, 909 F.Supp 2d 444, 454-55 (D. Md. 2012).

### B. **The Arbitration Agreement is governed by ordinary contract principles**

"Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 710 (4th Cir. 2001); *Walther*, 386 Md. at 425.  As such,  arbitration agreements must be treated like any other contract.  *Doyle v. Finance America LLC*, 173 Md. App. 386 (2005) citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991) (The courts must "place arbitration agreements upon the same footing as other contracts").

Maryland courts follow the "objective" test of contact interpretation. *Freedman v. Comcast Corporation*, 190 Md. App. 179, 192 (2010). Like other contracts, whether there is an agreement to arbitrate is a question of law for the court. *Rota–McLarty v. Santander Consumer USA, Inc.,* 700 F.3d 690, 699 (4th Cir.2012)*; NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.* 144 Md.App. 624, 632 (2002).

### C. **Arbitration Agreement is valid and enforceable**

Applying controlling contract law in Maryland to the case *sub judice*, there is no dispute that the parties executed a valid, binding and enforceable Arbitration Agreement.   It contains a broad arbitration clause where that the parties "expressly agree that all claims, controversies or disputes . . . arising out of in . . . any way to . . . the **Buyer's Order** . . . the *"Vehicle"* . . . or any documents or agreements of any kind relating thereto with the Dealer **("Claim"), shall be resolved  exclusively  through  final  and  binding  arbitration  in  accordance  with  the  terms**

8

**this arbitration agreement"** (emphasis in original). It specifically states that it "is intended to have the broadest application and includes but is not limited to, any tort, contract, common law, constitutional or other statutory claims arising out of any federal, state of local law." *See* Arbitration Agreement ¶. [5]

In determining the scope of the arbitration clause, the Court must resolve all doubts in favor of arbitration. *Redemptotist v. Coulthard Services, Inc.,* 145 Md.App.116, 135, (2002); *NRT Mid-Atlantic Inc., v. Innovative Properties Inc.,* 144 Md. App. 263 (2002). When faced with a valid arbitration clause, the court must order arbitration, unless it is clear that the arbitration clause cannot be reasonably interpreted to cover the dispute. *Long v. Silver,* 248 F.3d 309, 316 (4th Cir.2001); *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475–76 (1989)("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983).

The Arbitration Agreement here could not be any clearer or broader. When parties utilize broad all-encompassing language in arbitration clauses such as this one ("all claims or disputes. . . arising out of, in connection with or any way to relating to "the Buyer's Order", "the sale . . . of the Vehicle being purchased". . ."or any documents or agreements of any kind relating thereto

---

[5] Arbitration agreements requiring arbitration of claims under Maryland and Federal statutes are fully enforceable. *Grant-Fletcher,* 2014 WL 1877410 *9 ("claims pursuant to (federal and state statutes) are squarely within the scope of the valid Arbitration Agreement that is enforceable by" the defendant); *Muriithi v. Shuttle Express Inc.,* 712 F.3d, 173, 179 n. 6 (4th Cir. 2013) (citing *Green Tree Fin. Corp-Ala v. Randolph,* 531 U.S. 79 (2000); *Seney v. Rent- A Center Inc.,* 909 F.Supp 2d 444, 455 (D. Md. 2012) ("The Court concludes that a claim under the Magnuson Moss Warranty Act is properly encompassed within an agreement to arbitrate that includes within its scope statutory claims") affirmed in *Seney v. Rent-A-Center, Inc.* 738 F.3d 631 (4th Cir, 2013); *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 27 (1991); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 242 (1987) (holding alleged violations of RICO are covered by arbitration agreement); *See also, La' Tia Holloman v. Circuit City Stores,* 391 Md. 580 (2006); *Holmes v. Coverall North America Inc.,* 336 Md. 534 (1994).

with the Dealer"), the Court "must presume" that all claims are to be arbitrated, "unless expressly excluded." *Contract Const., Inc. v. Power Technology Center Ltd. Partnership*, 100 Md.App. 173 (1994); *NSC Contractors, Inc. v. Borders,* 317 Md. 394, 403 (1989); *See also, Drews Distributing, Inc. v. Silicon Gaming, Inc.,* 245 F.3d 347, 350 (4th Cir.2001); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.* 96 F.3d 88, 93 (4th Cir. 1996); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 812 (4th Cir.1989)("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration."); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir.1988.)*

In her Complaint, Kote alleges, *inter alia,* that the Defendants failed to disclose on the Buyer's Order that her Vehicle had been a prior short term rental. ECF No. 1. Her claims arise out of and relate to "the Buyer's Order" she signed for the "Vehicle being purchased" upon which her entire claim is premised. "This language self-evidently is broad enough to cover the claims asserted by the [plaintiff] in this action". *Jones v. Genus Credit Management Corporation*, 353 F.Supp 2d 598 (D.Md. 2005). Therefore, Kote's claims clearly fall within the scope of the Arbitration Agreement.

D. **Arbitration Agreement directly on the Buyer Order is fully enforceable**.

Arbitration agreements contained in a Buyer's Order or contracts for sale of automobiles are fully enforceable. *Rota – McLarty v. Santander Consumer USA Inc.,* 700 F.3d 690 (4th Cir. 2012). Kote signed the Buyer's Order required by King VW for all vehicles sold to their customers. The Arbitration Agreement was conspicuously titled, highlighted in **bold print** and underlined: **"Agreement to Submit All Disputes to Arbitration".** See Arbitration Agreement ¶1 (emphasis in original). It is not buried in the Buyer's Order. To the contrary, it appears

10

conspicuously in the very first paragraph of the Buyer's Order on the front page, in **bolded** print and underlined. *See* Arbitration Agreement ¶1 (emphasis in original).

Kote cannot legally claim that she is not be bound by the very Buyer's Order she signed and is suing on. Kote signed her name to the Buyer's Order expressly attesting that she "**read and understand(s) each of the terms and conditions set forth" (in the Arbitration Agreement) "and expressly agrees to all of them".** *See* Buyer's Order (Exhibit 1) (emphasis in original). Maryland law is well-established that a person who signs an arbitration agreement is "presumed to have read and understood its terms and as such will be bound by its execution". *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 594 (2007); *Walther,* 386 Md. at 429 (We are loath to rescind an agreement that "was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement"); *Sass v. Andrew,* 152 Md. App. 406, 440, (2003) (noting that a person "is under a duty to learn the contents" of a document before signing it and if "he fails to do so, he is presumed to know its contents."); *Dieng v. College Park Hyundai,* Civil No: DKC 2009-0068, 2009 WL 2096076 * 5 (D.Md. July 9, 2009) (There is "no merit" to the argument that the "Plaintiffs should not be held to an [arbitration] agreement they signed but did not have or take the time to read and understand").

Of course, had Kote chosen not to sign the Buyer's Order and purchase a vehicle somewhere else, which she was free to do, King VW would never have sold her the Vehicle and, therefore there would be no possible claim here.  Kote cannot obtain the benefits of the Buyer's Order while concurrently ignoring the arbitration provisions which was a condition precedent to receiving the Vehicle in the Buyer's Order. "No party suing on a contract should be able to enforce certain contract provisions while simultaneously attempting to avoid the terms of an arbitration provision contained therein." *U.S. v. Bankers Ins. Co.,* 245 F.3d 315, 323 (4th Cir.,

11

2001) *citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir., 2000) (holding that it would "both disregard equity and contravene [the FAA]" to allow a plaintiff "to claim the benefit of the contract and simultaneously avoid its burdens").

Since there is a broad arbitration clause signed by the parties covering this subject matter, Kote's claims must be submitted to binding arbitration and her claims must be dismissed.

## V. CONCLUSION

In light of the foregoing, it is respectfully requested that Defendants' Motion to Dismiss and Compel Arbitration be granted.

Respectfully submitted,

**Carr Maloney P.C.**                              **Wortman & Nemeroff, PA**

*/s/ Paul J. Maloney (with permission)*            */s/ Steven M. Nemeroff*
Paul J. Maloney (Fed Bar No. 02026)                Steven M. Nemeroff (Fed Bar No. 03956)
Andrew M. Williamson (Fed Bar No. 18721)           4710 Bethesda Avenue
2000 L Street, NW                                  Suite 203
Suite 450                                          Bethesda, Maryland 20814
Washington, D.C. 20036                             (301) 986-5200
(202) 310-5500

12